**In re Scott Raymond HAYNES, Debtor.**

**Bankruptcy No. 97–17900 RJB.**

United States Bankruptcy Court,
D. Colorado.

Dec. 15, 1997.

See also 197 B.R. 120.

Leo Weiss, Staff Atty., Denver, CO, for Barbara A. Shangraw.

Robert A. Lees, Robert A. Lees & Associates, Denver, CO, for Law Office of Sharon W. Grossenbach.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on October 28, 1997, on the United States Trustee's Motion to Examine Fees filed August 12, 1997, and the Response thereto filed September 17, 1997.

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a). It is a core matter under 28 U.S.C. § 157(b)(2)(A) and (I), and venue is proper.

This case was commenced by the filing of a Chapter 7 voluntary petition on June 2, 1997.

No Schedules or Statements were filed at that time and thus the case was a "deficient" case. The Clerk issued a Notice of Deadline for Filing Schedules, Deficiency, and Dismissal on June 3, 1997, giving the Debtor to and including June 18, 1997, to complete his filing. The filing was completed on June 12, 1997. The creditors' meeting was scheduled and was held on July 9, 1997, and on July 10, 1997, the Trustee filed his Trustee's Report of No Distribution. Thus, the case is a "no asset" case.

Along with the completed Schedules and Statements a Disclosure of Compensation of Attorney for Debtor was filed on June 12, 1997. This Statement was filed pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b). The Statement indicates that the total attorney's fees charged was $600.00, none of which was paid prior to the filing of the petition. The Statement recites that:

In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;

c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof; ... *Fees are for post petition work.* [Emphasis added]

By agreement with the debtor(s), the above disclosed fee does not include the following services: Litigated Adversary Cases

The Court finds that this Statement fully complies with the mandates of § 329(a).

This law firm is the same law firm involved in the case of *In re Martin,* 197 B.R. 120 (Bankr.Colo.1996), and this case, as readily admitted by Ms. Grossenbach, is the result of the firm's attempt to both comply with and work around the holdings in the *Martin* case. That case was a Chapter 7 case wherein the law firm had entered into an agreement with the debtor to handle the case on a flat fee

basis which would be paid in monthly installments *post-petition.* The Court in *Martin* found that this fee agreement, entered into *pre-petition,* created a dischargeable debt, and therefore the law firm had a conflict of interest with the debtor as of the date the petition was filed which required cancellation of the fee agreement.

In an effort to avoid the consequences of the *Martin* decision, the law firm now enters into fee agreements such as the one in this case (attached hereto as Government Exhibit A) whereby the client agrees as follows:

> Client has requested that a Deficiency Chapter 7 be filed on client's behalf and shall pay the $175.00 filing fee only prior to the filing of the deficiency Petition. Sharon W. Grossenbach agrees that there shall be no charge for the pre-petition work incurred in the filing of the initial petition. However, client understands that the bulk of the work will be performed *after* the filing of the initial Petition and agrees to cooperate with Sharon W. Grossenbach (and her employees and agents) for the purpose of completing the filing of all necessary documentation within the designated time thereafter. Client further agrees to pay a Flat Fee of $600 for the remaining post-petition work in accordance with the schedule set forth below; or a flat fee of $500 should it be paid in full prior to the 341 hearing . . . .

> Client understands that a bankruptcy petition discharges all unsecured debt that exists prior to the date of filing, except for certain specific types of debts listed in § 523 of the Bankruptcy Code. However, the bankruptcy filing has no effect on debts incurred after the date of filing. Client further understands that the retainer amount required to be paid in advance shall be applied in payment of the Court Filing Fee and for the attorney's time and fees spent prior to the filing of the case. The additional balance owed is to be applied toward work performed after the date the petition in bankruptcy is filed. These sums to be paid after the date of filing are for new work to be performed and are not dischargeable in the bankruptcy case. Client further understands that

> in a flat fee billing arrangement, it is difficult to allocate exactly the time that will be spent in any given case before the case is filed (pre-petition fees), and the time that will be spent after the case is filed (post-petition fees). Client agrees that amount paid prior to filing shall be in full payment of all pre-petition work and that the amount owed after filing shall be designated as a flat fee for the estimated post-petition work.

> After payment of the required pre-petition amount, the remaining amount due shall be paid in accordance with the following schedule: [thereafter is an *itemization of the fees due for each of seven months post-petition* ].

It is interesting to note that at the beginning of this Legal Representation Agreement For Bankruptcy ("Agreement") it recites that the "Retainer Date" is "5/97." Yet, at the end of the agreement it recites that the debtor signed it on June 11, 1997. The case was actually filed June 2, 1997.

The testimony on behalf of the law firm was that in most of the Chapter 7 cases it handles it has two meetings with the debtor. This usually takes about 1 hour with a paralegal and 1 hour with an attorney. Then a petition and Creditors' Matrix is filed, i.e., a "deficient case." After the petition is filed the Statements and Schedules are prepared and another meeting with the client is held for the client to review and sign these documents, including the Agreement, which are then filed with the court. Thereafter, the law firm performs the usual services such as attending the § 341 meeting, receiving and making calls to creditors, making copies of documents for the debtor or creditors, answering questions of the debtor, working out any redemptions with the creditors and debtor, etc.

Ms. Grossenbach also testified that a number of years ago she met with her accountant and they did a cost study for the law firm and concluded that, upon the average, the law firm earned about $600 per Chapter 7 case. She also testified that there was no particular "urgency" or "emergency" in the filing of this case and that the filing here could have been done in full without preju-

dice to the debtor. She further testified that about 50% to 60% of the Chapter 7 cases the law firm files are filed as "deficient" cases. She stated that *post-petition* attorney time was probably less than 2 hours and paralegal time was about 4 hours.

This Court has no problem approving a flat fee for an attorney. In fact, after more than fifteen years on the bench in this District, this Court will take judicial notice of the fact that a $600 flat fee for a routine Chapter 7 case is reasonable.[1] The problem arises from the fact that this "new" arrangement by this law firm does not "get around" the *Martin* decision. This Court is of the opinion that most of the time spent by attorneys and paralegals in Chapter 7 cases is spent *pre-petition*. Before an attorney can properly advise a client as to whether they should (1) file for bankruptcy; (2) file a Chapter 7, or (3) file a Chapter 13, they must gather all the financial information from the client, analyze the information, and then explain the situation to the client, including at least a rough outline of what a Chapter 13 plan would look like. All that remains after that is for this information to be typed onto the forms and file the forms with the court.

This Court did a survey of eleven[2] Chapter 13 cases filed by this law firm during the years 1994, 1995, and 1996. These were cases wherein this law firm detailed time spent *pre-petition*. The Court concluded that, on the average, the law firm spent 3.54 hours of attorney time and 1.8 hours of paralegal time *pre-petition*. The same amount of attorney and paralegal time should probably be spent *pre-petition* on Chapter 7 cases if attorneys are to comply with their ethical duties and the requirements of the Bankruptcy Rule 9011. And, according to this Court's understanding of the work that should be performed by an attorney *pre-petition* for either a Chapter 7 or Chapter 13 case, these average times do not appear to be excessive or unnecessary.

The law firm does not have contemporaneous time records to show what actual work was performed either *pre-petition* or *post-petition* in this case. The response of the law firm to this is that if they are forced to keep time records it will increase the costs to the clients. That may be so, but Congress has now, in effect, substantially codified the holding in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), into § 330(a)(3) of the Bankruptcy Code. That section now requires, for better or worse, that this Court analyze requests for attorney's fees by taking into account, *inter alia*, the time spent on the services and the rates charged for such services. Thus, for better or worse, and whether it will be more costly to debtors in bankruptcy or not, attorneys must keep contemporaneous time records if they seek to substantiate the fees they charge in bankruptcy cases. Without such time records, attorneys cannot carry their burden of justifying the fees charged or requested. This fact alone precludes the approval of the fees charged in this case.

In addition, the "new" fee agreement used here, by its own terms suggests that this Agreement was indeed entered into *pre-petition*, even though it was not signed by the debtor until *post-petition*. Thus, the law firm finds itself in exactly the same position it was in when the *Martin* case was decided.

Finally, the examination of the law firm's charges in Chapter 13 cases shows that the bulk of the work was indeed performed *pre-petition*. And if that is the case, and the Court so finds that it is the case, then the $600 flat fee for *post-petition* work cannot be sustained by the firm's own testimony. That testimony was that the firm determined historically that it earned $600 in fees for a Chapter 7 case—a **total** of $600 for the **entire** case. Thus, how can it now justify a fee of $600 for only a part of the case, i.e. the *post-petition* part? It cannot.

---

1. Judge Meyers has recently held that $700 is presumptively reasonable for attorney's fees in no-asset Chapter 7 cases in the Southern district of Illinois. *In re Crivilare*, 213 B.R. 721 (Bankr. S.D.Ill.1997).

2. Case Nos. 96–11058, 95–11373, 95–15001, 95–15129, 95–18179, 95–18242, 94–14639, 95–11849, 96–14100, 96–11123, and 96–17058. The vast majority of the Chapter 13 cases filed by this firm during this time period resulted in fee applications of $1,200 or less and therefore the firm was not required to file detailed time records.

The law firm has arguments for wanting to allow Chapter 7 debtors to be able to pay their attorney's fees in installments *post-petition* because, for example, the debtors simply don't have the funds available to pay all the fees *pre-petition*. I agree, as did Judge Krieger in the *Martin* case, with the court in *In re Mills*, 170 B.R. 404 (Bankr.Ariz. 1994), that there are legitimate and important public policy concerns about access to the bankruptcy system for indigent debtors. However, such public policy concerns are for Congress and not for the Courts. In fact, Judge Krieger pointed out that there are any number of creative solutions which can assist indigent debtors who have difficulty raising the necessary funds. *See, In re Martin, supra*, at 127. But the method chosen by the law firm here does not fit that category of creative solutions.

The Court does not find that the law firm's actions herein were taken in bad faith or that the firm intended in any way to deceive the Court. They have been open and frank as to what they were doing and the reasons for their actions. But this "solution" to the *Martin* case is not a solution allowed by the statute, and all it does is create more work for the Court's staff by forcing it to issue and docket deficiency notices and mail those notices to the debtor and counsel. The firm, in its pleadings herein, and in it's testimony, indicated that out there in the real world other attorneys are not complying with the dictates of *Martin* and routinely have clients pay their attorney's fees *post-petition*, or, *pre-petition*, they demand and receive post-dated checks from debtors. If attorneys are doing this they are actively perpetrating a fraud on the Court, and if this Court discovers such activity it will take the most extreme action available against such attorneys, including seeking disbarment. This Court also suggests that if any attorney knows of such activity, that attorney is duty bound to report it to this Court.

During this Court's analysis of the issues raised herein it came to the realization that the law set forth in the *Martin* case applies equally well in Chapter 13 cases. We have all overlooked that fact in this District and have for many years allowed **all** of the attorney's fees for Chapter 13 cases to be paid through the Chapter 13 plans. There is no provision found in the Bankruptcy Code that would except *pre-petition* attorney fees from discharge in Chapter 13 cases, or in any case. By this opinion this Division of the Court is announcing to the bar of this District that for all bankruptcy cases filed on or after January 1, 1998, it will apply the holdings of *In re Martin, supra*, to all cases—Chapter 7, Chapter 9, Chapter 11, Chapter 12, and Chapter 13. Counsel are advised that they must disclose to their clients that any fees earned *pre-petition* are dischargeable in bankruptcy. They must also be aware that if the attorneys seek to recover *pre-petition* fees from their clients *post-petition*, there is a conflict of interest between the client and the attorney which must be resolved.

Some may argue that § 330(a)(4)(B) allows attorneys to collect *pre-petition* fees on a *post-petition* basis in Chapter 12 and 13 cases. That section provides:

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

But, again, that section does not speak to the dischargeability of *pre-petition* fees. It only covers *post-petition* fees and allows the court substitute "benefit to the client" in lieu of "benefit to the estate" as the threshold requirement for the award of professional fees to debtors' counsel in Chapter 12 and 13 cases.

The effect of this Court's determination to apply the holdings of *Martin* to all cases will mean that every debtor will now have to come up with some amount of money for *pre-petition* attorney fees. It will mean that attorneys will no longer file Chapter 13 cases that really should be Chapter 7 cases just so the debtor can pay all of the attorney's fees over time. This Court has heard many times from attorneys that the **only** reason Chapter 13 was used was because of the debtor's lack of funds to pay attorney's fees. And, indeed,

this Court has often lamented that there was no reason for a certain debtor to file a Chapter 13 case when it appeared from the case file that a Chapter 7 would better serve that debtor. Thus, because clients will now have to pay for all *pre-petition* services before their case is filed, the attorneys will be able to **properly** advise their clients without being hampered by the conflict of interest problem that was recognized in *Martin.* And debtors will be better able to make a rational decision as to which Chapter best serves their needs.

This Court may not agree on a philosophical basis with the results mandated by the Bankruptcy Code as pronounced herein. But this Court is bound to apply the law as Congress has written it. If Congress decides to insert a new sub-section in § 523 to provide for the non-dischargeability of debtors' *pre-petition* attorneys fees, it certainly has that option. But until that time, we must all live with the law as it stands. It is, therefore,

ORDERED that the fee agreement between the Law Office of Sharon W. Grossenbach and Scott Raymond Haynes for representation prior to and in connection with this case is canceled and declared null and void and the Law Office of Sharon W. Grossenbach shall disgorge all fees received thereunder and surrender such fees to the Trustee herein.

### GOVERNMENT EXHIBIT A

LAW OFFICES OF
SHARON W. GROSSENBACH
ATTORNEYS AT LAW
SUITE 500, WORLD TRADE CENTER
1625 BROADWAY
DENVER, COLORADO 80202

SHARON W. GROSSENBACH                    TELEPHONE (303)571–0077

MARK E. HENZE                                        FAX (303)571–4227

### LEGAL REPRESENTATION AGREEMENT FOR BANKRUPTCY

This agreement covers the representation between myself and The Law Firm and Sharon W. Grossenbach.

Retainer Date _____5/97_____

1.  **REPRESENTATION AND FEE:** For a flat fee of $600 plus any applicable additional amounts as checked below, for a TOTAL FEE of $775, Sharon W. Grossenbach will represent and provide consultation services to me regarding the filing of my Bankruptcy Case.

    Additional Matters:
    
    | | | |
    |---|---|---|
    | ___✓___ | Filing Fee (Paid to Court) Chapter 7 | $175.00 |
    | _____ | Filing Fee (Paid to Court) Chapter 13 | $160.00 |
    | _____ | Filing Continuance of 341 Hearing or if Client fails to attend without prior notification | $100.00 |
    | _____ | Conversion to another Chapter | $100.00 |
    | _____ | Filing Amendment to add Creditors | $ 30.00 (each filing) |

This agreement does not cover certain unusual or extraordinary matters which are not anticipated at this time. The above flat rate does not cover assisting with the purchase of a home, securing abandonment orders, credit report repairs, appeals, actions to determine the status of allegedly non-dischargeable debts, objections to discharge, Rule 2004 examinations, the preparation of discovery, title transfer documents. Although rare, if required, these matters will be handled at the Standard hourly Fee listed below. Client will always retain the right to elect to use or not to use Sharon W. Grossenbach for these hourly matters.

Should client elect not to use the services of Sharon W. Grossenbach, client agrees to sign required documents discharging Sharon W. Grossenbach from further responsibility for these matters. Flat fees are not refundable once work has been commenced.

2. **PAYMENT OF FEES AND COSTS:** Client agrees to one of the following plans:

a. _____A total non-refundable retainer of $275.00 must be paid before Sharon W. Grossenbach will accept pre-petition creditor calls. This amount includes the $175.00 filing fee charged by the U.S. Bankruptcy Court and an estimate of the pre-petition fees incurred in responding to creditor inquiries.

b. _____Client has requested that a Deficiency Chapter 7 be filed on Client's behalf and shall pay the $175.00 filing fee only prior to the filing of the deficiency Petition. Sharon W. Grossenbach agrees that there shall be no charge for the pre-petition work incurred in the filing of the initial petition. However, client understands that the bulk of the work will be performed *after* the filing of the initial Petition and agrees to cooperate with Sharon W. Grossenbach (and her employees and agents) for the purpose of completing the filing of all necessary documentation within the designated time thereafter. Client further agrees to pay a Flat Fee of $600 for the remaining post-petition work in accordance with the schedule set forth below; **or a flat fee of $500.00 should it be paid in full prior to the 341 hearing.**

c. _____Up to $1500.00 for a Chapter 13 Paid through the 13 Plan upon confirmation pursuant to fee application.

Client understands that a bankruptcy petition discharges all unsecured debt that exists prior to the date of filing, except for certain specific types of debts listed in § 523 of the Bankruptcy Code. However, the bankruptcy filing has no effect on debts incurred after the date of filing. Client further understands that the retainer amount required to be paid in advance shall be applied in payment of the Court Filing Fee and for the attorney's time and fees spent prior to the filing of the case. The additional balance owed is to be applied toward work performed after the date the petition in bankruptcy is filed. These sums to be paid after the date of filing are for new work to be performed and are not dischargeable in the bankruptcy case. Client further understands that in a flat fee billing arrangement, it is difficult to allocate exactly the time that will be spent in any given case before the case is filed (pre-petition fees), and the time that will be spent after the case is filed (post-petition fees). Client agrees that amount paid prior to filing shall be in full payment of all pre-petition work and that the amount owed after filing shall be designated as a flat fee for the estimated post-petition work.

After payment of the required pre-petition amount, the remaining amount due shall be paid in accordance with the following schedule:

| | DATE | AMT. DUE | | DATE | AMT. DUE |
|---|---|---|---|---|---|
| PAYMENT # 1 | 7/15 | 75 | PAYMENT # 5 | 11/15 | 75 |
| PAYMENT # 2 | 8/15 | 75 | PAYMENT # 6 | 12/15 | 75 |
| PAYMENT # 3 | 9/15 | 75 | PAYMENT # 7 | 1/15 | 75 |
| PAYMENT # 4 | 10/15 | 75 | PAYMENT # 8 | 2/15 | 75 |

I understand that if any payment is not received by the date set forth above, Sharon W. Grossenbach may add a late fee in the amount of $15.00 and interest to the full remaining balance due at the rate of 18% per annum for *all* further payments. If I make all payments in a timely manner as agreed above, no interest will be added. If payments become more than 90 days delinquent, I understand that this obligation may be turned over to a collection agency for further action. If you cannot make a payment on time, please call us so that we may make other appropriate arrangements and prevent your obligation from being turned over to collections! This will often result in forgiveness of the late fees and interest!

Any additional agreed upon amounts will be billed on a monthly basis and I agree to pay any amount due on said bill within 30 days thereafter. I clearly understand that Sharon W.

Grossenbach is not obligated to perform any future services if the agreed upon monthly payment is not paid each month. Any amount not paid within 30 days of the date due will be charged interest at the rate of 18% per annum.

3.  **ADDITIONAL WORK REQUESTED UNDER HOURLY FEE:** Unless otherwise agreed herein, all hourly fees shall be billed monthly for actual work performed and shall be based upon the following schedule:

    PARALEGAL:  $ 60.00 per hour
    ATTORNEY:    $150.00 per hour

All non-flat fee work shall be billed in increments of 0.1 hours and Sharon W. Grossenbach shall keep contemporaneous records of the time spent on client's case. The fees will be paid as agreed upon between client and Sharon W. Grossenbach.

4.  **LAW OFFICE STAFF:** The client acknowledges that Sharon W. Grossenbach and Monty G. Hogue are the attorneys currently licensed to practice with this firm. Phil Wenzel, Mary Mattson, Susan Haag, Aaron Carson and Shannon Saling are paralegals.

5.  **OTHER MATTERS:** I agree to keep Sharon W. Grossenbach fully informed of my current address and telephone number at all times during this case. If I do not keep you informed of my current address and telephone number, or other contact information so that I can be reached by you, my failure shall be proof that I have released Sharon W. Grossenbach from their obligation to serve my future interests, and they may decide to no longer serve as my attorney. I clearly understand that Sharon W. Grossenbach is not obligated to perform any future services if the agreed upon payments are not made each month and may withdraw from providing any further representation on my behalf.

I (We) have read and understand this Agreement and acknowledge receipt of a copy thereof.