**In re Joseph Lester NEWKIRK, Debtor.**

No. 01–51439.

United States Bankruptcy Court, W.D. North Carolina, Wilkesboro Division.

Feb. 8, 2002.

---

Jack G. Lezman, Attorney at Law, Charlotte, NC, for Debtor.

Barrett Crawford, Hickory, NC, trustee.

John Bramlett, Charlotte, NC, for Administrator.

## ORDER REQUIRING DISGORGEMENT OF MONIES AND AWARDING SANCTIONS

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter was heard on January 10, 2002 upon the Bankruptcy Administrator's Motion to Review Compensation of the Chapter 7 Debtor's counsel, Jack G. Lezman. At the hearing, the Administrator was represented by counsel John Bramlett. Jack G. Lezman appeared on his own behalf. The Debtor Joseph Lester Newkirk was also present.

Based upon the evidence presented and the record before it, the Court finds and concludes as follows:

1. A voluntary Chapter 7 petition was filed on behalf of the debtor by Lezman ("Lezman") on August 17, 2001.

### Postdated Checks

2. In order to represent him in this bankruptcy, Lezman quoted Newkirk a $995 fee. An additional $200 was necessary for the filing fee. Newkirk was unable to pay Lezman in full up front. Rather, at Lezman's suggestion, Newkirk paid him $700 (filing fee plus $500 attorneys fee) up front on August 16, 2001 and agreed to pay Lezman an additional $495, after bankruptcy.

3. To ensure payment of the backside fees, Lezman had the debtor draw five postdated checks ($100 each) to his order. The checks were postdated for dates ranging from late August, 2001 through December, 2001.

4. After the bankruptcy was filed, Lezman negotiated three of these checks, receiving $300.

5. Still later, Newkirk closed his bank account. Thus, when Lezman deposited the next two checks on December 31, 2001, they were returned. Newkirk says Lezman knew his account had been closed when the checks were negotiated. However, Lezman denies this.

6. In any event, Newkirk's girlfriend replaced the NSF checks with her own checks, paying Lezman $300.[1]

### Relief from Stay/Returning Phone Calls

7. After bankruptcy, Newkirk says he attempted to contact Lezman with questions about his case. He testified that Lezman never returned his call.

8. On October 29, 2001, Washington Mutual Bank filed a Motion for Relief from Stay in Newkirk's case, seeking authority to foreclose on his residence. Lezman filed a Response, triggering a hearing on December 6, 2001 in Wilkesboro, NC ("Relief from Stay hearing").

9. Newkirk testified that he placed at least fifteen calls to Lezman within a three week period concerning these matters. In each instance, Debtor says he left Lezman his pager number, cell phone number, and home phone number. His calls, he says, were not returned.

---

1. Obviously, the numbers don't add up. Newkirk supposedly owed $500. He paid $300 from checks that cleared and received $300 for NSF checks from Newkirk's girlfriend, for a total of $600. The record does not explain the $100 discrepancy.

**460**

10. On, or shortly before, the date of the December 6th hearing, Lezman and opposing counsel agreed to a continuance. They contacted the Court and asked that the matter be moved to a later date. The request was granted.

11. However, Newkirk was not made aware of this continuance. He took a day off work and was in court on December 6th. Newkirk was surprised to find that the matter had been continued. He lost about $115 in wages for the missed day of work.

12. The debtor telephoned the Administrator to complain about Lezman's failure to return his telephone calls or to meet with him concerning this case. The Administrator in turn called Lezman to relay Newkirk's concerns. Only after this call did Newkirk receive a return phone call from his attorney.

13. The Administrator then filed the current motion. She seeks a determination as to whether Lezman failed to properly represent his client the debtor in this bankruptcy case in violation of Rule 1.4 of The North Carolina State Bar's Rules of Professional Conduct. Rule 1.4 generally requires a lawyer to keep his client reasonably informed about the status of a matter and to promptly comply with reasonable requests for information.

14. Second, the Administrator asks the Court to review the compensation paid by Newkirk to Lezman and any amounts still owing by the debtor to Lezman and determine whether any fees should be disgorged and/or forgiven.

15. Regarding the Rule 1.4 matter, while this Court probably has jurisdiction to entertain such matters, it is preferable that proceedings against an attorney for alleged breaches of a State Bar's rule be handled by the body that wrote them and through its grievance procedures.

16. However, a court possesses an independent power to discipline the attorneys who practice before it for misconduct in a case. *See United States v. Shaffer Equipment Co., et al.*, 11 F.3d 450, 461–62 (4th Cir.1993). In bankruptcy, this power is reinforced by the amplified by the Court's jurisdiction over the debtor's case and matters related thereto. This jurisdictional grant includes the power to resolve disputes between a debtor and his counsel. *See* 28 U.S.C. § 1334 (2001).

17. In this case, it is obvious that counsel has not properly communicated with his client, either not returning his calls or informing him of a hearing change.

18. While it is the nature of the profession that attorneys cannot always take client calls or immediately return them, here no timely effort was made to respond to Newkirk. Nor was it appropriate to continue the hearing without advising the debtor.

19. As such, Lezman should reimburse Newkirk for his lost wages in the amount of $230, representing the two days work he missed on account of these proceedings (the relief from stay hearing plus this one).

20. Turning to the postdated check payment arrangement, there are at least two substantial problems with Lezman receiving payment in this fashion.

21. First of all, when Lezman accepted postdated checks for services in filing Newkirk's petition, this gave rise to a credit transaction between the two. Lezman became Newkirk's creditor. Lezman then had a conflict of interest with his client. *See In re Martin*, 197 B.R. 120, 125 (Bankr.D.Col.1996).

22. A conflict of interest merits denial of an attorney's fee. Another Bankruptcy Court put it succinctly: "[O]nce a conflict of interest is shown, attorney fees

should be entirely denied, even though the services rendered had intrinsic value and brought a benefit to the estate." *See In re Watson Seafood & Poultry Co.,* 40 B.R. 436, 439–40 (Bankr.E.D.N.C.1984). *Cited in In re Martin,* 197 B.R. 120, 125 (Bankr. D.Col.1996).

23. Likewise, in the case of *In re Haynes,* 216 B.R. 440, 441 (Bankr.D.Col. 1997), a Chapter 7 debtor had paid his attorneys with a combination of cash and postdated check. Hoping to defend the transaction, the attorneys argued that in the "real world," attorneys routinely have clients pay their attorney's fees post-petition by demanding and receiving post-dated checks. *See id.* at 444. Judge Brumbaugh was not impressed:

> "If attorneys are doing (this), they are actively perpetrating a fraud on the Court, and such activity will receive the most extreme action available against such attorneys, including seeking disbarment." *See id.*

■ The undersigned agrees. It is not proper for a bankruptcy attorney to accept postdated checks from a Chapter 7 debtor client.

24. There is a second problem with Lezman taking and negotiating postdated checks in this case. As noted, the arrangement created a debt by Newkirk in favor of Lezman. This was a dischargeable, prepetition claim. *See In re Hessinger & Assoc.,* 192 B.R. 211, 217–18 (N.D.Cal.1996), *In re Voglio,* 191 B.R. 420, 422 (D.Ariz.1996), *In re Biggar,* 185 B.R. 825, 829 (N.D.Cal.1995), *In re Symes,* 174 B.R. 114, 119 (Bankr.D.Ariz.1994).

25. Upon the bankruptcy filing, the Section 362 automatic stay went into effect. This legal injunction restrained creditors, including Lezman, from collecting their prepetition debts or acting against Newkirk's property. 11 U.S.C. § 362 (2001).

26. The stay injunction was made permanent by Newkirk's December 12, 2001 discharge. 11 U.S.C. § 524 (2001).

27. Being well aware of Newkirk's bankruptcy, Lezman's negotiation of Newkirk's postpetition checks was a wilful violation of the stay and the discharge injunction. This was a most inappropriate action by the debtor's attorney.

28. Having both a conflict of interest and having wilfully violated the automatic stay/discharge, Lezman should disgorge all monies which he has collected on account of this case, in sum $600 (excepting the $200 filing fee).

29. The undersigned elects not to impose further sanctions against Lezman at this time. Lezman is a relative newcomer to the bankruptcy area. Perhaps he did not realize the inherent problems in taking the postdated checks. Paying Newkirk his lost wages and disgorging his own fees should remind him of this and of the need to communicate with his clients.

### Surrender of Possession of the Residence

■ 30. Newkirk raised a final complaint against Lezman at hearing. After the December 6th relief from stay hearing, Newkirk surrendered possession of his home to the mortgage lender. He is upset that Lezman didn't tell him that he could remain in possession until the lender obtained relief from stay and completed a state foreclosure sale.

31. The Court has no sympathy with this complaint. In his petition, a Chapter 7 debtor must state whether he intends to surrender, redeem, or reaffirm liened property. 11 U.S.C. § 521 (2001). He is also required to perform that intention within 45 days of the filing. *Id.* Certainly, a debtor is not legally entitled to a free

place to live until a foreclosure sale is complete.

32. Newkirk's petition indicates an intent to reaffirm the mortgage debt. He filed bankruptcy on August 17. The relief from stay hearing was in December. As of that point, well beyond the 45 day deadline, Newkirk had neither reaffirmed the mortgage, nor surrendered the residence. Having no legal right to remain in the property, he has no cause to complain now that his attorney didn't instruct him how to beat the lender of out some rent.

It is therefore ORDERED:

1. Respondent Jack G. Lezman shall immediately disgorge all sums which were paid to him by, or on behalf of, Joseph Lester Newkirk in conjunction with this bankruptcy case.

2. Lezman shall also pay Debtor his lost wages in the sum of $230.00 for the two days he missed work to attend the Relief from Stay Hearing and this Sanctions Hearing.

3. A compliance hearing will be conducted on this Motion on March 7, 2002 at 2:00 p.m. at the Johnson J. Hayes Federal Building, Second Floor, 207 West Main Street, Wilkesboro, NC.

**SO ORDERED.**