**In re Diana BUSETTA–SILVIA, formerly known as Diana Ainsworth, Debtor.**

**Diana Busetta–Silvia, and Kelley L. Skehen, Trustee, Appellants.**

**BAP No. NM–03–087.**
**Bankruptcy No. 13–02–17194–SA.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 8, 2004.

---

Submitted on the briefs: *

\* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

Michael K. Daniels, Albuquerque, New Mexico, for Appellant Diana Busetta–Silvia.

Before MICHAEL, McNIFF, and THURMAN, Bankruptcy Judges.

OPINION

MICHAEL, Bankruptcy Judge.

In a case of first impression within our circuit, we are asked to decide whether counsel for Chapter 13 debtors have the right to be paid under the terms of a Chapter 13 plan for services performed prepetition. The bankruptcy court ruled that such services must be paid for in full prior to the filing of the case or be treated like any other prepetition unsecured claim.[1] We reverse and remand for further proceedings.

### I. Background

In July 2002, Diana Busetta–Silvia ("Debtor") sought the advice of Michael K. Daniels ("Daniels"), an attorney who practices in the area of bankruptcy. Using information obtained at the meeting, Daniels drafted a set of bankruptcy schedules and a statement of financial affairs for the Debtor. The Debtor did not file a bankruptcy petition at that time. In late September of 2002, Daniels and the Debtor conferred again. Daniels revised the documents that he had previously drafted. Debtor paid Daniels a $300 retainer, which Daniels applied toward the amount owed by the Debtor for prior services.

On October 2, 2002, Debtor and Daniels met once more. Daniels further revised the bankruptcy papers that he had prepared for the Debtor. Debtor paid Daniels an additional retainer in the amount of $450.00, which he deposited into his trust account.

On October 9, 2002, the Debtor filed her Chapter 13 petition. On that date, Daniels's prepetition fees, costs, and taxes totaled $875.62.[2] After application of the $300 retainer, $575.62 was owed. On October 31, 2002, Daniels applied the $450 retainer to the payment of filing fees in the amount of $185 and prepetition attorney's fees and costs in the amount of $265. This left $310.62 in unpaid prepetition fees (the "Prepetition Fees").

The case continued along the normal and customary lines of a Chapter 13 case, and culminated in the confirmation of a plan in January 2003. On January 21, 2003, Daniels filed a fee application (the "Fee Application"), requesting compensation for services rendered to the Debtor and reimbursement of costs incurred on the Debtor's behalf during the period of July 2002 through January 2003. In the Fee Application, Daniels sought approval as an administrative expense of fees and costs incurred in the total amount of $3,279.43, including the Prepetition Fees. The Fee Application recites and reflects the application of the prepetition retainers to the amounts owed.

At a preliminary hearing on the Fee Application, the bankruptcy court inquired *sua sponte* as to whether it could approve payment of the Prepetition Fees as an administrative expense. In order to provide the parties with an opportunity to respond to the bankruptcy court's concerns, a final hearing on the Fee Application was held approximately one month later. At that hearing, the parties stipu-

---

1. *In re Busetta–Silvia*, 300 B.R. 543 (Bankr. D.N.M.2003); *see also In re Busetta–Silvia*, 308 B.R. 537 (Bankr.D.N.M.2004) (order denying motion for reconsideration).

2. Apparently, New Mexico law requires the assessment of a tax on legal services. Other than the referral to the tax, the record is silent on this point.

lated that the amounts Daniels requested in the Fee Application, including the Prepetition Fees, were "reasonable, necessary, provided benefit to the Debtor, provided benefit to the estate, and were incurred in connection with the ... bankruptcy case."[3] The bankruptcy court accepted the stipulation.

The only issue addressed at the final hearing was whether the Prepetition Fees could be paid as an administrative expense.[4] Daniels, the trustee, and a third party, appearing *amicus curiae*,[5] argued without opposition in favor of allowing the Prepetition Fees as an administrative expense. Shortly after the final hearing, the bankruptcy court entered an Order allowing all postpetition fees and costs requested in the Fee Application, as modified by an agreement between Daniels and the trustee, as an administrative expense (the "Postpetition Fee Order"). The bankruptcy court did not rule on the Prepetition Fees in the Postpetition Fee Order, stating that the matter remained under advisement.

The bankruptcy court subsequently entered its memorandum opinion and order (collectively, the "Prepetition Fee Order"),[6] disallowing the Prepetition Fees as an administrative expense and allowing them as a general unsecured claim to be paid *pro rata* with the claims of other unsecured prepetition creditors under the terms of Debtor's confirmed plan. The bankruptcy court held that, despite case law and sound policy in favor of treating the Prepetition Fees as an administrative expense, such treatment was not expressly authorized by 11 U.S.C. §§ 330 or 507,[7] and those sections could not be interpreted to grant prepetition fee claims priority in light of the fundamental distinction between prepetition and postpetition assets and liabilities.

The Debtor and the trustee filed a joint notice of appeal from the Prepetition Fee Order.[8] After filing the joint notice of appeal, the trustee asked the bankruptcy court to reconsider the Prepetition Fee Order. On April 14, 2004, the bankruptcy court granted the trustee's motion to reconsider, but refused to alter the Prepetition Fee Order (the "Reconsideration Order"). The joint notice of appeal was not amended to include the Reconsideration Order. Therefore, the only order before this Court is the Prepetition Fee Order.[9]

## II. *Appellate Jurisdiction*

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The Prepeti-

---

3.  Stipulation of Facts ¶ 4, *in* Appellant's Appendix at 38–39.

4.  All other issues relating to the Fee Application were resolved by agreement of the parties.

5.  Jeffrey Goldberg filed, as amicus curiae, a brief in support of the Fee Application. This brief, which was considered by the bankruptcy court, is not part of the record on appeal, and Mr. Goldberg is not a party to this appeal.

6.  *Busetta–Silvia*, 300 B.R. 543.

7.  Unless otherwise stated, all statutory references are to title 11 of the United States Code.

8.  Although the trustee joined the Debtor in filing a Notice of Appeal from the Prepetition Fee Order, she did not file a brief or in any way participate in the appeal. Instead, the trustee has submitted a letter to the Court stating that she neither concurs in nor opposes the Debtor's brief. Due to the fact that the issue on appeal was raised by the bankruptcy court *sua sponte*, and none of the parties argued in favor of the position adopted by the bankruptcy court, there is no appellee in this appeal.

    The United States Trustee also filed a notice of appeal from the Prepetition Fee Order. That appeal has been dismissed.

9.  Fed. R. Bankr.P. 8002(b).

tion Fee Order was timely appealed because the joint notice of appeal was filed within ten days of its entry, and became effective when the bankruptcy court entered its Reconsideration Order.[10] The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of New Mexico.[11]

■ In order to take jurisdiction, we must determine whether the Prepetition Fee Order is a "final order" pursuant to 28 U.S.C. § 158(a)(1). "[A] decision is ordinarily considered final and appealable under [§ 158(a)(1)] only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "[12] In bankruptcy, finality is not considered within the context of the entire case; rather, "an order is final . . . when it disposes of a . . . discrete controversy pursued within the broader framework cast by the petition."[13] In the Prepetition Fee Order, the bankruptcy court conclusively resolved the allowance of and the priority afforded to Daniels's claim for the Prepetition Fees and fixed his prepetition claim as a matter of law. No further proceedings are necessary or contemplated as to the allowance of or the priority afforded to the Prepetition Fees. Thus, the Prepetition

Fee Order is a "final" order for purposes of review.[14]

### III. Standard of Review

■ The issue herein, whether attorney's fees and costs incurred prepetition in preparation for the filing of a Chapter 13 petition are administrative expenses or general unsecured claims, is a question of law that is reviewed *de novo*.[15] No deference is given to the bankruptcy court's decision.

### IV. Discussion

■ In order to resolve this appeal, an understanding of the statutory framework dealing with the allowance and payment of priority claims in Chapter 13 cases is required. Section 1322(a)(2) states that, unless the holder of a priority claim agrees to different treatment, a Chapter 13 plan shall "provide for full payment, in deferred cash payments, of all claims entitled to priority under section 507[.]"[16] Section 507(a)(1) affords first priority to "administrative expenses allowed under section 503(b)[.]"[17] Section 503(b) states, in relevant part, that "there shall be allowed administrative expenses, . . . including— . . . (2) compensation and reimbursement awarded under section 330(a) of this ti-

**10.** *Id.* at 8002(a) and (b).

**11.** 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e).

**12.** *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)), *quoted in Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 768 (10th Cir. BAP 1997).

**13.** *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1499 n.2 (10th Cir.1994) (internal quotation omitted).

**14.** *See Cascade Energy & Metals Corp. v. Banks (In re Cascade Energy & Metals Corp.)*, 956 F.2d 935, 939 (10th Cir.1992).

**15.** *See, e.g., Octagon Res., Inc. v. Bonnett Res. Corp. (In re Meridian Reserve, Inc.)*, 87 F.3d 406, 409 (10th Cir.1996) (legal issues related to the allowance of fees are reviewed *de novo*); *accord In re Commercial Fin. Servs., Inc.*, 298 B.R. 733, 747 (10th Cir. BAP 2003).

**16.** 11 U.S.C. § 1322(a)(2).

**17.** 11 U.S.C. § 507(a)(1).

tle[.]"[18] Reading these statutes together, an attorney fee awarded under § 330(a) is entitled to a first priority under § 507(a)(1) and must be paid in full under the terms of the Chapter 13 plan, unless the attorney agrees otherwise.

■ Compensation for an attorney representing a Chapter 13 debtor is authorized under § 330(a)(4)(B), which states:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor *in connection with the bankruptcy case* based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.[19]

While the section refers to services rendered "in connection with the bankruptcy case," it places no restriction upon the timing of the services; *i.e.*, requiring the services to have been performed after the filing of the bankruptcy petition.[20] The bankruptcy court, while acknowledging that § 330(a)(4)(B) makes no distinction between prepetition and postpetition fees, ruled that prepetition fees could not be given administrative priority under § 330(a)(4)(B).[21] The bankruptcy court based its ruling on the "pervasive prepetition/postpetition distinction" found throughout the Bankruptcy Code, which it believed must be read into § 330(a)(4)(B).[22] The bankruptcy court also based its ruling on the belief that prepetition attorney fees have no entitlement to priority in Chapter 13 cases.[23]

■ As the United States Supreme Court has repeatedly observed, courts must first look to the plain language of the relevant statute; if the statute is clear on its face, " 'the sole function of the courts is to enforce it according to its terms.' "[24] Courts should only consider alternative interpretations when the literal application of the statute would produce an absurd or unreasonable result,[25] or is demonstrably

---

18. 11 U.S.C. § 503(b)(2).

19. 11 U.S.C. § 330(a)(4)(B) (emphasis added).

20. A case arises upon the filing of a bankruptcy petition. *See* 11 U.S.C. §§ 301, 302, 303 and 304.

21. *Busetta–Silvia*, 300 B.R. at 546.

22. *Id.* ("Because the prepetition/postpetition distinction is a fundamental concept that inheres throughout the Code, Congress ought not to be expected to have reiterated or specified it in every context in the Code. Thus, the Court ought to assume that Congress intended that the prepetition/postpetition distinction be read into §§ 329(a), 330(a)(4), 503(b), 507(a)(1), and 1322(a)(2) unless there is some evidence to the contrary, preferably in the text.")

23. *See id.* at 548 ("In consequence, prepetition attorney fees, not listed in either the priority or dischargeability statute, are treated as any other unsecured non-priority dischargeable debt: they may be paid pro rata with the other unsecured non-priority claims, but no more.").

24. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)); *see also Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation omitted) (interpreting § 330 of the Bankruptcy Code).

25. *See, e.g., Holy Trinity Church v. United States*, 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity."); *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) ("[E]ven when the plain meaning did not pro-

at odds with the intentions of the statute's drafters.[26] The bankruptcy court did not read § 330(a)(4)(B) as allowing prepetition fees under its plain language: we do.[27] Instead of enforcing the plain language of § 330(a)(4)(B), the bankruptcy court has engrafted a requirement that services be performed postpetition in order to qualify for priority status. This qualification is not found in the statute. The addition of the requirement that services be performed postpetition into § 330(a)(4)(B) is contrary to the interpretation of § 330(a) in *Lamie v. United States Trustee*,[28] where

the United States Supreme Court acknowledged that while § 330(a) is poorly drafted, it does not require reading words into its provisions or ignoring its express terms.[29] We find § 330(a)(4)(B) to be unambiguous and hold that it provides the requisite basis to allow prepetition fees as an administrative claim.[30]

■ In this case, the parties have stipulated, with the approval and acceptance of the bankruptcy court, that the services for which the Prepetition Fees were incurred were "reasonable, necessary, provided benefit to the Debtor, provided benefit to

duce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole this Court has followed that purpose, rather than the literal words." (footnote and internal quotations omitted)).

26. *Ron Pair*, 489 U.S. at 242, 109 S.Ct. 1026.

27. The bankruptcy court heavily relied on *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), for the proposition that interpreting a section within the Bankruptcy Code requires reference to all of its sections. *See, e.g., Busetta–Silvia*, 300 B.R. at 546–47. The reliance is misplaced. *Timbers* only requires reference to other statutory provisions when the disputed section is *ambiguous. See Timbers*, 484 U.S. at 371, 108 S.Ct. 626 ("Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." (citations omitted)). Given the plain meaning of § 330(a)(4)(B), it was improper for the court to look at other sections of the Bankruptcy Code for guidance. Indeed, any sections that contemplate a distinction between prepetition and postpetition debts are irrelevant to the interpretation of § 330(a)(4)(B).

28. 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

29. *Id.*, 124 S.Ct. at 1032. The Supreme Court has consistently overturned cases that have engrafted qualifications into unambiguous sections of the Bankruptcy Code. *See, e.g., Union Bank v. Wolas*, 502 U.S. 151, 155–56, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991) (refusing to read into § 547 a distinction between long-term debt and short-term debt for purposes of avoidance and noting in the process that "[g]iven the clarity of the statutory text, respondent's burden of persuading us that Congress intended to create or to preserve a special rule for long-term debt is exceptionally heavy"); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (refusing to read into § 522(*l*) a good faith requirement not contemplated by the plain language of the statute); *see also Owen v. Owen*, 500 U.S. 305, 312–14, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (refusing to treat state law exemptions and federal exemptions differently under § 522(f) and stating that there was no reason "to create a distinction that the words of the statute do not contain").

30. Courts have given the phrase "in connection with the bankruptcy case" a broad construction. *See, e.g., In re Keller Fin. Servs. of Fla., Inc.*, 248 B.R. 859, 879 (Bankr.M.D.Fla. 2000) ("The phrase may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy.") (issue of disclosure under § 329); *In re Ostas*, 158 B.R. 312, 321 (N.D.N.Y.1993) (same); *In re Campbell*, 259 B.R. 615, 626 (Bankr. N.D.Ohio 2001) (same).

the estate, and were incurred in connection with the ... bankruptcy case."[31] The Prepetition Fees fall squarely within the parameters of § 330(a)(4)(B). The language "in connection with the case" found in § 330(a)(4)(B) contemplates that counsel for Chapter 13 debtors will perform services prior to the filing of a bankruptcy case, and that fees for such services fall within the protections of §§ 503(b) and 507(a), and are thus entitled to priority status. While the prepetition/postpetition distinction recognized by the bankruptcy court is a fundamental concept found in many sections of the Bankruptcy Code, Congress did not write it into § 330(a). Nothing in § 330(a) indicates that it should be written in by implication.

In reaching its decision, the bankruptcy court relied heavily upon an unpublished decision of the United States Bankruptcy Court for the Northern District of Texas, *In re Scribner*.[32] We conclude that *Scribner* supports the decision we make today. In *Scribner*, the debtor first met with counsel in late November of 2000. In the time period between November 30, 2000, and December 8, 2000, counsel incurred attorney's fees of $2,862.50. An additional fee of $105 was incurred on March 28, 2001. Thereafter, a foreclosure action was filed against the debtor's homestead, and the property was to be "posted" for foreclosure on July 3, 2001. The debtor and counsel began meeting on June 22, 2001, with an eye toward filing a petition in bankruptcy in order to stop the foreclosure proceedings. Between June 22, 2001, and June 29, 2001, counsel incurred fees of $638. On July 2, 2001, counsel caused a bankruptcy petition to be filed on behalf of the debtor. Additional fees of $490.50 were incurred on the petition date.

On January 22, 2002, counsel for the debtor filed a fee application in the bankruptcy case. Counsel sought to recover fees relating back to the November 30, 2000, meeting with the debtor, claiming that all of the services that he had rendered were rendered "in connection with the bankruptcy case." The court had several concerns with the fee application, one of which was whether all of the fees sought were entitled to administrative priority. After thorough consideration of the issue, the *Scribner* court allowed all fees incurred after June 22, 2001, but before the bankruptcy case was actually filed, as an administrative expense. In so ruling, the court expressly found that these fees were for services rendered "in connection with the case," and that, under § 330(a)(4)(B), even though these services were rendered prior to the filing of the bankruptcy case, they were entitled to administrative priority under §§ 503(b)(2) and 507. The court framed the issue in the following manner:

> Thus, as relevant here, the Court must first address what the Bankruptcy Code means when it requires that to be allowable, the fees must be incurred "in connection with the case." Specifically, can prepetition fees incurred by counsel for a Chapter 13 debtor be awarded under section 330(a)(4)(B) or does the reference to the "case" in section 330(a)(4)(B) require that an actual case be pending for fees to be allowable?[33]

The *Scribner* court found that the services rendered prior to June 22, 2001, were not rendered in connection with the bankruptcy case, and thus refused to grant those

---

**31.** Stipulation of Facts ¶ 4, *in* Appellant's Appendix at 38–39.

**32.** No. 401–44799 (Bankr.N.D.Tex. Aug. 7, 2002).

**33.** *Id.* at Conclusions of Law ¶ 5.

fees priority status. The opinion went on to state that "the Court concludes that fees are incurred 'in connection with' a bankruptcy case when the client has chosen bankruptcy as the means through which to resolve his financial difficulties and counsel thus begins to prepare for an actual filing under Chapter 13." [34] Thus, the court in *Scribner* reached the opposite result of the bankruptcy court in this case. As a result, we find the bankruptcy court's reliance upon *Scribner* to be misplaced. [35]

The bankruptcy court also relied upon cases that held that fees for services performed prepetition were no more than dischargeable unsecured debts. We note that the cases relied upon by the bankruptcy court were Chapter 7 cases, *not* Chapter 13 cases. [36] Our ruling today is limited to

Chapter 13 cases; we offer no pronouncement upon the issue of administrative priority of attorney's fees for debtor's counsel in Chapter 7 cases. It is true that, in one of the cases relied upon by the bankruptcy court, the court expressed its belief that § 330(a)(4)(B) did not grant administrative priority to prepetition fees in Chapter 13 cases. [37] However, any such statement is mere *dicta*, as the case was a Chapter 7 case. We also note that the decisions relied upon by the bankruptcy court on this issue are not uniformly followed even in that district. [38] Finally, we note that the judge in the *Haynes* case seems to have had an intent to cure an ill unrelated to either the issue of discharge or administrative priority. [39]

34. *Id.* at Conclusions of Law ¶ 11.

35. The bankruptcy court quoted the following passage from *Scribner:*

> Like other parties who [continue] to deal with the Debtor while he [has] financial difficulties, counsel for the Debtor is simply another unsecured creditor unless a retainer is paid to assure payment of those [fees].

*Busetta–Silvia,* 300 B.R. at 548 (citing *Scribner* ). The quotation, although accurate, must be considered in light of the *Scribner* court's ultimate decision as well as in the context of the sentence that precedes it:

> [T]he Court concludes, for the reasons set forth below, that the fees incurred several months prior to the Petition Date, while perhaps incurred "in contemplation of" a possible bankruptcy case, were not incurred "in connection with" the present case and thus are not allowable as an administrative expense in the case. Like other parties who continued to deal with the Debtor while he had financial difficulties, counsel for the Debtor is simply another unsecured creditor unless a retainer is paid to assure payment of those fees.

*Scribner,* Conclusions of Law ¶ 3. When the sentence relied upon by the bankruptcy court is read in context, it does not support the bankruptcy court's position.

36. *See Busetta–Silvia,* 300 B.R. at 548 (citing *In re Martin,* 197 B.R. 120 (Bankr.D.Colo.

1996); *In re Haynes,* 216 B.R. 440 (Bankr. D.Colo.1997)).

37. *In re Haynes,* 216 B.R. at 444–45.

38. *See In re Perry,* 225 B.R. 497 (Bankr. D.Colo.1998) (holding that fees for debtor's counsel in Chapter 7 cases are entitled to administrative expense priority).

39. We find the following portion of the *Haynes* decision to be revealing:

> The effect of this Court's determination to apply the holdings of *Martin* to all cases will mean that every debtor will now have to come up with some amount of money for pre-petition attorney fees. It will mean that attorneys will no longer file Chapter 13 cases that really should be Chapter 7 cases just so the debtor can pay all of the attorney's fees over time. This Court has heard many times from attorneys that the only reason Chapter 13 was used was because of the debtor's lack of funds to pay attorney's fees. And, indeed, this Court has often lamented that there was no reason for a certain debtor to file a Chapter 13 case when it appeared from the case file that a Chapter 7 would better serve that debtor. Thus, because clients will now have to pay for all pre-petition services before their case is filed, the attorneys will be able to properly advise their clients without being ham-

The bankruptcy court offered the following solutions to the problem of not allowing prepetition fees to be paid as priority claims:

Attorneys who provide prepetition services to their clients who have such severe cash flow problems are not without some succor. The most obvious relief is that provided indirectly by Rules 1007(c) and 3015(b) and § 1326(a)(1), which provide for (a) the filing of schedules and the plan within fifteen days of the filing of the petition (which deadlines can be and routinely are extended) and (b) the first payment under the plan to be made within thirty days of the filing of the plan. Counsel can do a considerable amount of the work postpetition and thus have an administrative claim for that work.

But the Court concedes that such a solution is only a partial one; as Amicus so carefully details, a significant amount of work is required to (a) examine and verify the debtor's circumstances, (b) determine whether a filing is appropriate, (c) if so, determine which chapter is most appropriate, (d) advise the debtor of those determinations and get the debtor's feedback and decisions, and (e) prepare the petition, the creditors' list and the other documents needed for the "skeleton" filing. This is and should be no small amount

of work and responsibility; the Court does not dispute Counsel's contention that chapter 13 prepetition services are a "crucial and necessary component of [a debtor's chapter 13] reorganization."

These facts put the attorney in the position of having to do part of the work without getting paid. To some extent, attorneys frequently do some work without charge. But the offer of a "free consultation" or, in other contexts, engaging in "client development", usually requires a much smaller commitment of resources. And in any event, such efforts are voluntary.

Other solutions include obtaining payment beforehand from the debtor's friends or family members, *see Land v. First Nat'l Bank of Alamosa (In re Land)*, 943 F.2d 1265, 1266 (10th Cir. 1991), or accepting payments *pari passu* with the other non-priority unsecured creditors.[40]

These suggestions are *dicta*. Moreover, they are unnecessary given the plain meaning of § 330(a)(4)(B).[41]

The suggestion that counsel defer a significant portion of the work until after the case is filed is, as the bankruptcy court readily acknowledges, unrealistic. Even if such deferral were feasible, it would create a significant administrative strain on practitioners and the courts.[42] A requirement

---

pered by the conflict of interest problem that was recognized in Martin. And debtors will be better able to make a rational decision as to which Chapter best serves their needs.

*In re Haynes*, 216 B.R. at 444–45 (emphasis omitted). It thus appears that the court in this case perceived an abuse of Chapter 13 by bankruptcy practitioners; *i.e.*, cases were being filed as Chapter 13 cases solely to allow for payment of attorney's fees. No such abuse is presented in this appeal. In any event, we respectfully disagree with the conclusions of the *Haynes* court, at least as applied to Chapter 13 cases.

**40.** *Busetta–Silvia*, 300 B.R. at 550–551.

**41.** By our ruling, we are not advocating against the providing of legal services on a *pro bono* basis. Our decision relates only to those instances where attorneys have taken a case with the expectation of payment for their services.

**42.** Most courts do not schedule confirmation hearings and first meetings of creditors until after the initial documents, including the bankruptcy schedules, have been filed. If those documents are not filed with the petition, then someone in the clerk's office is

that attorneys provide prepetition representation for free or that debtors find family members or friends to bankroll their case runs contrary to the priority structure outlined in §§ 330, 503, and 507 and to the notion that debtors are entitled to competent and properly compensated representation.[43] Finally, requiring counsel for a debtor to participate in the case as a general unsecured creditor places counsel in the position of holding a claim adverse to the interests of his or her client.[44] Nothing in § 330(a)(4)(B) requires counsel for Chapter 13 debtors to walk such a precarious tightrope.

## V. Conclusion

The decision of the bankruptcy court is reversed. This case is remanded with instructions to allow the Prepetition Fees in full as an administrative priority claim under §§ 330(a) and 507.

required to devote further time and energy to the monitoring of the case, so that the first meeting and confirmation hearing can be scheduled, and so that appropriate deadlines can be established. In addition, if the debtor does not file his or her Chapter 13 plan with the petition, the plan and the notice of hearing on confirmation must be separately noticed, generating additional expense.

43. See In re Yates, 217 B.R. 296, 302 (Bankr. N.D.Okla.1998) ("This Court wants debtors in Chapter 13 cases to receive the best representation possible, and for the attorneys who represent those debtors to be fairly and ade-

quately compensated."). Reliance on the "kindness of strangers" is an altruism that carries little weight in the halls of bankruptcy.

44. If the attorney for the debtor is required to delegate some of his or her fee to the status of an unsecured creditor, he or she has a vested interest in seeing the debtor pay as high a percentage of the unsecured debt as possible. The debtor, on the other hand, is best served by proposing a plan that calls for the minimum amount necessary to meet confirmation standards. These two interests are at unescapable odds.