**In re Diane BUSETTA–SILVIA, Debtor.**

**No. 13–02–17194 SA.**

United States Bankruptcy Court, D. New Mexico.

Oct. 29, 2003.

Michael K. Daniels, Raynard Struck, Albuquerque, NM, for Debtor.

Karen H. Bradley, Albuquerque, NM, for Creditor.

### MEMORANDUM OPINION IN SUPPORT OF ORDERS GRANTING IN PART AND DENYING IN PART APPLICATION FOR COMPENSATION AND REIMBURSEMENT

JAMES S. STARZYNSKI, Bankruptcy Judge.

This decision addresses the issue, raised by the Court on its own, of whether counsel may be compensated postpetition, as an administrative claim from estate assets, for work performed for the debtor in preparation for the chapter 13 filing. The Court, reluctantly, concludes that the Bankruptcy Code does not permit that compensation and therefore will deny a portion of the fee application of Debtor's counsel.[1]

Before the Court is the Application of Counsel (Michael K. Daniels) for Debtor in Possession for Allowance of Compensation and Reimbursement of Expenses, for Administrative Expense Priority, and for Payment directly to Debtor's Attorney in the Event of Conversion or Dismissal ("Application") (doc 16), an objection thereto by the chapter 13 trustee ("Trustee") (doc 21), the brief in support of the Application by Michael K. Daniels ("Counsel") (doc 27), a Stipulation of Facts submitted by Counsel and the Trustee in support of the Application (doc 28), an amicus curiae brief filed by Jeffrey Goldberg in support of the Application (doc 30) ("Amicus"), an order granting in part the relief requested in the Application and reserving for decision only the issue of whether $310.62 of the amount asked for would be

---

1. This Court previously issued an Amended Order on Interim Application for Allowance And Payment of Compensation and Reimbursement Of Expenses and Costs Filed by Debtors' Counsel on this same issue in *In re Anaya*, No. 13–01–11205 SA, doc 72 (entered January 29, 2003). The decision in this case supersedes or overrules the summary decision in the *Anaya* case, including any discussion in the *Anaya* case of how prepetition retainers are to be characterized or treated.

allowed (doc 31), a supplemental brief by Counsel in support of the Application (or, more precisely, the award of the $310.62) (doc 35), and a memorandum brief by the Trustee in support of the Application (also directed at the remaining $310.62) (doc 36). The Stipulation of Facts recited among other things that Counsel had complied with Rule 2016, that all the fees were "incurred in connection with the bankruptcy case", and that the work done for which payment is now sought was reasonable, necessary and benefitted the estate and/or the debtor. The Court had reached similar conclusions based on its independent review of the file.

In two well argued briefs, Counsel urges that the statutes and rules do not explicitly require different treatment between pre- and postpetition fees, and in fact the statutes and rules suggest that there should not be a distinction. Counsel also argues that at least some case law supports this position, that the authoritative chapter 13 treatise does not make such a distinction, and sensible public policy requires payment of such prepetition bills.

In his informative brief, Amicus argues that nothing in the Code or legislative history addresses the distinction that the Court draws, and details the practical and policy considerations that dictate the opposite rule. He pointedly asks why the Court should assume that Congress intended an interpretation of the Code that hurts debtors, creditors, counsel, trustees and the courts, when the opposite interpretation would help all those constituencies.

Trustee argues that the plain language of the Code does permit payment of prepetition fees with postpetition assets. (Counsel concurs in this argument.) And

Trustee agrees that the practical and policy aspects of chapter 13 practice require the payment of the prepetition bills with postpetition assets.[2]

*ANALYSIS*

■ Fundamental to the structure of bankruptcy law is the distinction between prepetition and postpetition assets, debts and activity, and the differing treatment accorded them. *Compare, for example,* § 101(10)(A) ("creditor" includes entity holding claim against the debtor that arose before or at the time of the filing of the petition) *with* § 101(10)(B) ("creditor" includes entity holding claims which are incurred or treated postpetition), and § 547 (prepetition preferential transfers) *and* § 548 (prepetition fraudulent transfers) *with* § 549 (postpetition transfers). *See also* § 362(a)(1),(2),(6) and (7) (automatic stay applicable to various prepetition actions and claims against debtor or estate), and § 365(g)(1) (postpetition rejection of unassumed executory contract or unexpired lease results in prepetition claim against estate). The Code also distinguishes between prepetition and postpetition claims, to wit, § 502(f) (involuntary gap claims), (g) (claims resulting from postpetition rejection of unexpired lease or executory contract), (h) (claims arising from recoveries of property under sections 522, 550 and 553) and (i)(claims that arise postpetition for prepetition taxes); and provides different treatment for the two kinds of claims, *for example,* §§ 1129(a)(9)(A) and 1322(a)(2) (in chapter 11 and 13 cases respectively, administrative claims must be paid in full on confirmation unless claim holder agrees to different treatment). Further evidence of that distinction is found in the rulings of

---

**2.** None of the parties have argued the theories of the attorney-client relationship as an executory contract or as a reaffirmable debt. Thus the Court does not consider those theories.

Nor does the Court consider any argument that might have been brought pursuant to § 503(b)(3)(D) were this a chapter 11 case ("substantial contribution").

various circuit courts of appeal that disapprove of orders permitting the early postpetition payment of certain prepetition claims. *See Chiasson v. J. Louis Matherne and Assoc. (In re Oxford Management, Inc.),* 4 F.3d 1329, 1334 (5th Cir. 1993) (payment of associate broker's share of leasing fees pursuant to prepetition contract not allowed to be paid from leasing fees collected postpetition by debtor leasing agency); *B & W Enters., Inc. v. Goodman Oil Co. (In re B & W Enters., Inc.),* 713 F.2d 534, 537 (9th Cir.1983) (immediate payment of prepetition claims of "critical vendors" in non-railroad case not allowed); *see also Official Comm. of Equity Security Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987) (payment for tubal reconstructive surgery or in vitro fertilization prior to plan confirmation in A.H. Robins case not allowed). In consequence, the prepetition/postpetition distinction should be part of the background of any decision interpreting the Code, a requirement if the Code is to be read holistically. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.),* 330 F.3d 548, 559 (3rd Cir.2003)(It is especially true that the Bankruptcy Code should be construed holistically.). While the distinction may not always matter, any decision which ignores the distinction should be carefully examined.

To a large extent, the parties' arguments hinge on this distinction having no significance in this context. As the parties correctly point out, nothing in §§ 329(a), 330(a)(4), 503(b), 507(a)(1) and 1322(a)(2)

explicitly specifies that prepetition fees are not entitled to postpetition payment, whether on a priority basis or otherwise. Yet that lack of explicitness cannot itself serve as the basis for permitting such a payment.

■ Because the prepetition/postpetition distinction is a fundamental concept that inheres throughout the Code, Congress ought not to be expected to have reiterated or specified it in every context in the Code. Thus, the Court ought to assume that Congress intended that the prepetition/postpetition distinction be read into §§ 329(a), 330(a)(4), 503(b), 507(a)(1) and 1322(a)(2) unless there is some evidence to the contrary, preferably in the text.

■ Amicus points to no specific text that says that the distinction is not applicable here. Trustee and Counsel, on the other hand, argue that the "plain language" of § 330(a)(4)(B) [3] permits payment of prepetition fees. The phrase "representing the interests of the debtor *in connection with the bankruptcy case*" (emphasis added) echoes the language of § 329(a), which clearly deals with the debtor's transaction with the attorney, including prepetition transactions. And read by itself, § 330(a)(4)(B) appears to make no distinction between prepetition and postpetition fees. But the similarity in language to § 329(a) is not enough support for the proposition, not when matched against the Code's pervasive prepetition/postpetition distinction. And reading the wording of § 330(a)(4)(B), "... representing the interests of the debtor in connection with the bankruptcy case ...", in isolation from the

---

**3.** "In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the

bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

rest of the Code is not an acceptable method of interpretation. *Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. at 371, 108 S.Ct. 626 (Statutory construction is a "holistic endeavor" and phrases viewed in the isolated context of a single code section may be less clear than when they are viewed in relation to the remainder of the statutory scheme.).

The "plain language" argument is also refuted by the legislative history of § 330(a)(4)(B). Were Congress to have intended such a departure from the past and continuing practice, it presumably would have said so, at least in the legislative history. *See Dewsnup v. Timm,* 502 U.S. 410, 419–20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (it is not plausible to read into an ambiguous statute a broad new remedy that is contrary to basic bankruptcy principles). In this case, that history makes clear that Congress sought to clarify the standards for compensating counsel[4] and to ensure that chapter 12 and chapter 13 counsel were not precluded from being paid by the standard of "benefit to the estate."[5] But nowhere is there a mention of paying prepetition attorney fees, and the changes made by Congress are completely consistent with the prior practice under the Code.

■ Unquestionably work done but not paid for prior to the filing of the petition results in a prepetition claim against the estate.[6] Section 507(a) explicitly provides that certain prepetition claims will be paid by the estate postpetition on a priority basis: certain unpaid wages and compensation, contributions to employment benefit plans, grain and fishery claims, down payments, spousal and child support, taxes and FDIC claims. Although the statute does not explicitly say that no other prepetition claims will be paid on a priority basis, it is clear from the specific enumeration of those claims that the Code does not intend that any others be paid. *Adventure Resources, Inc. v. Holland,* 137 F.3d 786, 796–97 (4th Cir.1998)("Section 507 is intended to be the exclusive list of priorities in bankruptcy," *citing* 3 Lawrence P. King, Collier on Bankruptcy ¶ 507.02[2] (15th ed.1996)).[7]

---

**4.** "The section also clarifies the standards for court award of professional fees in bankruptcy cases. These changes should help foster greater uniformity in the application for and processing and approval of fee applications." H.R. Doc. No. 5611, § 224 (1994), *reprinted in* Lawrence P. King, Collier on Bankruptcy, Appendix E, Pt. 9(b) (Floor statements) (15th ed. Rev.2003).

**5.** "This provision lists specific factors which the court must consider in determining compensation awards to professionals in bankruptcy cases. The provision provides that attorneys for individual debtors in chapter 12 and 13 cases may be awarded reasonable compensation for services rendered to the debtor by emphasizing that the benefit and necessity of such services is an important factor to be considered.... [It] contains language ensuring that chapter 12 and 13 individual debtors' attorneys may be awarded compensation for their work in protecting the debtor's interests in a bankruptcy case."

*Bankruptcy Reform: Hearing on H.R. 5116 Before the Subcomm. on Econ. and Commercial Law of the Comm. on the Judiciary,* 103d Cong. 550–51 (1994).

**6.** This statement is meant only minimally to be a legal conclusion; that is, the statement only means that as a factual proposition the work was done before the petition was filed, and as a legal proposition the work done resulted in a claim against the estate. The statement is not meant to constitute the (circular) legal conclusion to the effect that by definition a prepetition claim cannot be paid as an administrative expense.

**7.** Of course, this statement somewhat begs the question. If, as the parties argue, prepetition attorney fees are administrative expenses, they would not be listed in any other part of § 507(a). Nevertheless, the listing of those specific prepetition claims to which Congress accorded priority is at least suggestive that

Similarly (although less relevantly), certain prepetition claims survive discharge; they are listed in § 523(a), and include spousal and child support, educational loans, certain taxes, etc. Again, the enumeration of those exceptions to discharge excludes those not listed. *In re Martin,* 197 B.R. 120, 127 (Bankr.D.Colo.1996). In consequence, prepetition attorney fees, not listed in either the priority or dischargeability statute, are treated as any other unsecured non-priority dischargeable debt: they may be paid pro rata along with the other unsecured non-priority claims, but no more. "Like other parties who [continue] to deal with the Debtor while he [has] financial difficulties, counsel for the Debtor is simply another unsecured creditor unless a retainer is paid to assure payment of those funds." *In re Scribner,* No. 401–44799, slip op. at Conclusion of Law ¶ 3 (Bankr.N.D.Tex. August 7, 2002).

The parties' position is not without some support in the case law. *In re Perry,* 225 B.R. 497 (Bankr.D.Colo.1998), a chapter 7 case, construed § 329(a) and Rules 2016 and 2017 to permit the payment of prepetition claims postpetition as an administrative expense. The court's reasoning was that the language of the statute ("... agreed to be paid ... for services rendered or to be rendered ..." in contemplation of or in connection with a bankruptcy case) and of the rules requiring disclosure of those arrangements, imply congressional approval for postpetition payment of such fees. *Id.,* at 500. *Perry* further ruled that § 727 needed to be "harmon-

ized" with § 329(a) to achieve that result. *Id.*

*In re Martin,* on the other hand, makes clear that there is no conflict between the discharge provisions of § 727 and the disclosure provisions of § 329(a). The two provisions have entirely different purposes: the former defines the substantive rights of discharge and the latter prevents the overreaching of attorneys in bankruptcy cases. 197 B.R. at 127.

In *In re Haynes,* 216 B.R. 440 (Bankr. D.Colo.1997), the court ruled that the language of § 330(a)(4)(B) expanded the Code to allow the court to substitute "benefit to the client" in lieu of "benefit to the estate" as the threshold standard for allowing compensation in chapter 12 and 13 cases. The court correctly ruled that this section does not address the issue of the dischargeability of prepetition fees. *Id.* at 444. While this Court agrees that *Haynes* was a chapter 7 case and the application of that court's analysis of § 330(a)(4)(B) to chapter 13 cases was *dicta,* that fact does not change the correctness of the analysis.[8]

*In re Scribner* addressed head on the issue of whether prepetition attorney fees could be paid postpetition in a chapter 13 case, *Scribner,* slip op. at Conclusion of Law ¶ 5, and supports the parties' position. The *Scribner* court begins by following the statutory path that Trustee and Counsel trace: § 1326(b)(1) requires payment of § 507(a)(1) claims, § 507(a)(1) claims include § 503(b) claims; § 503(b)(2) allows as administrative expenses compensation and reimbursement of expenses allowed

Congress did not intend the priority payment of prepetition attorney fees.

**8.** This Court does not agree with the statements in *Haynes,* 216 B.R. at 444–45, about chapter 13 cases being filed only to ensure that attorney fees are paid. This Court's consistent experience in this district is that chapter 13 cases are filed for the purposes contem-

plated by the statute: to keep homes and vehicles, § 1322(b)(5) and (c), to pay taxes without further penalty or interest, § 1322(a)(2), to obtain the "super discharge", § 1328(a)(2), or to deal with a charge of an "abusive" chapter 7 filing by the United States Trustee's office, § 707(b).

under § 330(a)(4)(B) for representing the interests of the debtor "in connection with the case." *Id.*, Conclusion of Law ¶ 4. Focusing on the specific wording "in connection with the case" in § 330(a)(4)(B), the *Scribner* court distinguished between "in contemplation of" the case and "in connection with" the case. *Id.*, Conclusion of Law ¶¶ 6, 9–12. Although the court disallowed some of the prepetition fees for having been rendered "in contemplation of" the case, it permitted the payment of prepetition attorney fees rendered "in connection with" the case. The *Scribner* decision is based on the "plain language" of the statute, *id.*, Conclusion of Law ¶ 11. It does not apply or even discuss the prepetition/postpetition distinction that the Code applies to claims or the legislative history of § 330(a)(4)(B), both of which this Court finds dispositive.

■ *In re Perry* also argued that payment of prepetition fees is needed to ensure debtor representation and to avoid the conflict of interest occasioned by reaffirmation agreements for attorney fees. 225 B.R. at 500. And the parties, particularly Amicus, all eloquently echo and amplify those policy arguments; for example, that there will be more and better lawyers to serve needy debtors that file chapter 13 cases, that the filing of more chapter 13 cases (as opposed to chapter 7 cases) is consistent with Congress' desire for debtors to repay more of their debts, and that having fewer debtors self represented in

chapter 13 (or any bankruptcy) cases is a considerable benefit for everyone involved, including the courts.[9] The Court does not gainsay any of the disadvantages of the current situation or any of the asserted benefits.[10] Unfortunately, good policy alone is not enough to interpret the Code in a way that it is not written; the parties' arguments need to be addressed to Congress as the entity that is authorized to legislate that policy.

> [We] do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts.

*Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1, 13–14, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). (Citations omitted.) *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(When the statute is plain, the sole function of the courts is to enforce it according to its terms.); *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1362 (10th Cir.1997)("It goes without saying, we are bound by the law as we find it, not as we would like it to be.").

■ Counsel correctly argues that the disinterestedness requirement of § 327 does not apply to debtor's counsel in a

---

9. "Categorical exclusion of fees can only result in denial of access to justice, with debtors unrepresented or under-represented. The increase in pro se cases, and in cases which become pro se after the petition is filed, does not aid the administration of our bankruptcy system." *United States Trustee v. Garvey, Schubert & Barer (In re Century Cleaning Services, Inc.)*, 195 F.3d 1053, 1064 (9th Cir. 1999) (Thomas, J., dissenting) (addressing effect of not permitting payment from the estate

to chapter 7 debtor's attorneys for postpetition work).

10. In fact, the situation is arguably worsened by Congress' (legitimate) concerns for the public fisc evidenced by Rule 1006(b)(3): "Postponement of Attorney's Fees: The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case."

chapter 13 case.[11] Thus it is possible for counsel to represent the debtor and have a prepetition claim against the estate. Counsel also correctly argues that chapter 13 counsel need not obtain an employment order, whereas such an order is required in a chapter 11 case to represent the estate/debtor in possession. And he argues that unlike the chapter 11 estate or debtor in possession, which legally come into existence only upon the filing of the petition, the chapter 13 debtor exists as an individual before the petition is filed and continues to exist afterward. However, even granting the validity of all of these propositions, they are necessary but not sufficient reasons for granting what the parties want.

■ Somewhat similarly, Counsel argues that the provisions of § 329(a) and its implementing Rule 2016(b), requiring the disclosure of "the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney", contemplates payment of prepetition attorney fees as administrative expenses. But the purpose of § 329(a) is not to provide for the payment of prepetition attorney fees; it is rather to provide the full and prompt disclosure of what payments have been or will be made in connection with a bankruptcy case, and to provide the opportunity to correct any abusive behavior. *In re Martin*, 197 B.R.

at 127; *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (10th Cir. BAP 1997). Counsel's argument violates what might be called the "potato rule" for interpreting the Code: "Bankruptcy law is a series of lumps. Do not make mashed potatoes out of it."[12]

Counsel also cites 1 Keith M. Lundin, Chapter 13 Bankruptcy (3rd ed.2000 and Supp.2002), § 25.4 at 25–6, for the proposition that debtors unable to pay a prepetition fee may nevertheless obtain counsel willing to accept payment through a chapter 13 plan. But Counsel also candidly admits that nowhere in this otherwise very useful treatise does the author address the issue directly.

Attorneys who provide prepetition services to their clients who have such severe cash flow problems are not without some succor. The most obvious relief is that provided indirectly by Rules 1007(c) and 3015(b) and § 1326(a)(1), which provide for (a) the filing of schedules and the plan within fifteen days of the filing of the petition (which deadlines can be and routinely are extended) and (b) the first payment under the plan to be made within thirty days of the filing of the plan. Counsel can do a considerable amount of the work postpetition and thus have an administrative claim for that work.

But the Court concedes that such a solution is only a partial one; as Amicus so carefully details, a significant amount of work is required to (a) examine and verify

---

**11.** Subsections 327(b) and (c) omit any reference to chapter 13. § 327 is the statute which limits certain representations to those professionals with no conflict of interest. Section 327(a) precludes an attorney with a prepetition claim against the debtor from representing the debtor in possession in a chapter 11 case or the trustee in a chapter 7 or 11 case. No such disinterestedness test prohibits the attorney from representing the debtor (as opposed to the trustee) in a chapter 7 case, or the debtor in a chapter 13 case. *In re Dugger,*

1999 WL 33486706, at *1 n. 3 (Bankr.D.Idaho 1999) (addressing the issue of postpetition preconversion chapter 13 fees in a case converted from chapter 13 to chapter 11).

**12.** The quote is attributed to a certain bankruptcy teacher, Steve Riesenfeld, by Professor David G. Epstein in Epstein, Bankruptcy and Related Law in a Nutshell (6th ed. 2002) (West Group) at 123.

the debtor's circumstances, (b) determine whether a filing is appropriate, (c) if so, determine which chapter is most appropriate, (d) advise the debtor of those determinations and get the debtor's feedback and decisions, and (e) prepare the petition, the creditors' list and the other documents needed for the "skeleton" filing. This is and should be no small amount of work and responsibility; the Court does not dispute Counsel's contention that chapter 13 prepetition services are a "crucial and necessary component of [a debtor's chapter 13] reorganization."

These facts put the attorney in the position of having to do part of the work without getting paid. To some extent, attorneys frequently do some work without charge. But the offer of a "free consultation" or, in other contexts, engaging in "client development", usually requires a much smaller commitment of resources. And in any event, such efforts are voluntary.

Other solutions include obtaining payment beforehand from the debtor's friends or family members, *see Land v. First Nat'l Bank of Alamosa (In re Land),* 943 F.2d 1265, 1266 (10th Cir.1991), or accepting payments pari passu with the other non-priority unsecured creditors.[13]

## CONCLUSION

The parties have all raised excellent arguments supporting the concept of providing postpetition administrative claim status for prepetition work done for the debtor in preparing for the chapter 13 filing. Unfortunately, since the Code does not permit such a claim, it is only Congress, and not this Court, that can provide the parties the relief they seek. The Court will therefore enter an order denying the allowance of that part of the Application for the sum of $310.62.

---

13. It was not argued here and the plan did not provide that the attorney could have a claim in the chapter 13 to be treated differently than the other claims under section 1322(b)(1).