**In re Lucia P. GUTIERREZ, Debtor.**

No. 03–53047–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 5, 2004.

J. Todd Malaise, San Antonio, TX, for Debtor.

James Bailey, San Antonio, TX, for Marion A. Olson, Chapter 13 Trustee.

### MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY DEBTOR'S ATTORNEY

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the foregoing matter. The debtor, Lucia P. Gutierrez, and Marion A. Olson, chapter 13 Trustee in this case ("Trustee"), filed a Joint Motion to Reconsider Order Granting Trustee's Objection to Proof of Claim Filed by Debtor's Attorney and Request for Hearing on December 9, 2003 ("Joint Motion") (Doc. # 16). The court granted the Joint Motion on January 26, 2004(# 19) and set the Trustee's Objection to Proof of Claim for hearing on March 9, 2004. After consideration of the pleadings and hearing the arguments of counsel and the Trustee, the court made an oral ruling on the record denying the Trustee's Objection and re-

served the right to put the ruling in writing for the benefit of the local bar and chapter 13 Trustee's office. This constitutes the court's written decision thereon.

### Facts

The facts are not in dispute. The debtor filed a voluntary chapter 13 petition on June 2, 2003. In the debtor's schedules, the Law Offices of J. Todd Malaise, debtor's counsel ("counsel"), is listed as a creditor holding an unsecured priority claim of $2,000 on Schedule E (for fees incurred in representing the debtor in this case) and an unsecured nonpriority claim of $1,195, for attorney's fees for representing the debtor in a prior chapter 13 case, fees that were not paid in that case.[1] On August 20, 2003, the court confirmed the debtor's plan and approved debtor counsel's fees for representation in this case (# 11).

On September 30, 2003, the Trustee filed an Objection to the law firm's prepetition unsecured claim for unpaid fees from the prior case (# 13). The Trustee contended that the amount that counsel *had* received in the prior case, $755, was a reasonable fee for a case that had lasted approximately seven months, and that the claim filed for the balance should be disallowed as unreasonable under 11 U.S.C. § 502(b)(4). *See* Trustee's Obj. to Proof of Claim Filed by Debtor's Attorney ¶ 5. The Trustee also claimed that the attorney now representing the debtor should not be able to assert a claim against the debtor for unpaid fees from a prior case because to do so would create a conflict of interest not permitted by section 327(a) of the Code. *See id.* The court granted the Trustee's

---

1. That prior case was filed on November 2, 2001, in a joint case with the debtor's husband, and confirmed on January 22, 2002, and the court awarded attorney's fees of $2,000 (Case No. 01–55127–C). That case was later dismissed on February 24, 2003 due to the debtor's failure to abide by the terms of the Agreed Order with the chapter 13 Trustee,

and the case was closed on September 9, 2003. It was listed in this case on the debtor's voluntary petition, Form B1, as a prior bankruptcy filed within the last 6 years. Counsel was also listed on the debtor's schedules, but only on Schedule E, in the prior case as an unsecured priority creditor for $2,000 for outstanding attorney's fees.

Objection on November 4, 2003(# 14), there having been no timely response filed to the objection.

On December 9, 2003, the debtor, debtor's counsel, and the Trustee filed a joint motion to reconsider the order sustaining the objection. Debtor's counsel said that they had not received the objection and so had not responded. The Trustee agreed to reconsideration because it preferred a ruling on the merits, given the ramifications for chapter 13 practice in this division. *See* Joint Mot. to Reconsider Order Granting Trustee's Obj. to Proof of Claim Filed by Debtor's Attorney and Req. for Hearing (# 16). The court granted hearing, and heard arguments from both the Trustee and debtor's counsel.

### Summary of the Arguments

At the hearing, the Trustee argued that the claim for fees from the previous case should be disallowed first of all by virtue of section 502(b)(4), which states that "the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim ... except to the extent that—if such claim is for services of an insider or attorney of the debtor, *such claim exceeds the reasonable value of such services.*" 11 U.S.C. § 502(b)(4) (emphasis added). The amount of fees actually paid to the attorney in the previous case was, in the Trustee's view, sufficient and reasonable compensation given the outcome of the case, and no more should be awarded. In addition, the Trustee suggested that the court should really evaluate the reasonableness of fees being charged to the debt-

or over the two successive cases, viewing both cases as a single effort to reorganize. Under such an approach, the total fees being charged by the attorney for assisting the debtor, over two cases, would be $4,000, an amount which, said the Trustee, would exceed the reasonable value of the services rendered.

The Trustee also argued that Section 327(a) should be applied in chapter 13 cases, and that the fact that counsel filed a proof of claim as an unsecured creditor for outstanding fees from a prior case meant that he could not be a "disinterested person." The Trustee then asserted that this conflict of interest should either prevent counsel from asserting a claim from a prior case, or disqualify counsel from being employed to represent the debtor in this case. As further support, the Trustee pointed to the state bar's disciplinary rules regarding conflicts of interest, which rules, in his view, should disqualify the attorney from asserting a claim in this case (or, alternatively, disqualify the attorney from representing the debtor in this case). *See* TEX. DISCIPLINARY R. PROF. CONDUCT R. 1.06 cmt. 5 (1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. (Vernon Supp. 1995) (State Bar Rules art X [[section]]9) ("The lawyers [sic] own interests should not be permitted to have adverse effect on representation of a client, even where paragraph (b)(2) is not violated.").[2] While there is a large amount of case law in chapter 11 and 7 cases which hold that an attorney who has such a claim is not a "disinterested person"[3] under Section

---

**2.** Rule 1.06(b)(2) states that a "lawyer shall not represent a person if the representation of that person: (1) involves a substantially related matter in which that persons [sic] interests are materially and directly adverse to the interests of another client of the lawyer or the lawyers [sic] firm; or (2) reasonably appears to be or become adversely limited by the

lawyers [sic] or law firm's responsibilities to another client or to a third person or by the lawyers [sic] or law firms [sic] own interests."

**3.** *See, e.g., In re Advanced Imaging Techs., Inc.,* 306 B.R. 677 (Bankr.W.D.Wash.2003) (holding that a law firm's disclosed security

101(14),[4] the Trustee admitted that there is not much relevant case law in the chapter 13 context.

In response, debtor's counsel claimed that he clearly had a "claim" under Section 101(5), because the court had allowed his fees in the previous case. He argued that his status as both a priority creditor in the present case and an unsecured creditor as a result of his claim from the previous case could not set up any greater conflict of interest than had already been created by his status as a priority creditor in the current case alone, even if he had asserted no claim from the prior filing. The fee from the prior case was *prima facie* reasonable, he said, given that it had been allowed in the prior case. *See Order Confirming the Debtor's Plan Awarding a Fee to the Debtor's Attorney, and Related Orders* (# 11), at 6; *see also* 11 U.S.C. § 330(a)(4)(B) ("court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section").

Debtor's counsel responded, with regard to the section 327(a) disqualification argument that, first of all, if section 327(a) applied at all, it would only operate to prohibit him from representing the debtor in this case, and would have no independent effect on the reasonableness of his claim from the prior case (*i.e.*, section 327(a) is irrelevant to the section 502(b)(4) inquiry). But he added that section 327(a) should not in fact be applied to debtor's counsel in chapter 13 cases, primarily because of the extraordinary impracticality of such a rule. In addition, he suggested that perhaps the Supreme Court's ruling in *Lamie*, decided this term, meant that debtor's lawyers in chapter 13 cases were not bound by section 327(a) and its disinterestedness requirement in the first place.

### Analysis

### I. *Section 502(b)(4)*

 Section 502(b)(4) permits disallowance of a pre-petition claim for attorney's fees if those fees are found to be unreasonable. If the issue is confined thusly, the resolution of this matter appears to be simple. Fees allowed by court order in a prior case are, as debtor's counsel noted, *prima facie* reasonable, even if the case fails post-confirmation. However, this *prima facie* showing can be rebutted in a subsequent case when the request for payment of those fees is presented as a claim in the subsequent case. This is so

---

interest in a pre-petition retainer, used to secure future fees, did not disqualify the firm from representing the debtor-in-possession in its chapter 11 case under section 327(a)); *In re Guard Force Mgmt., Inc.*, 185 B.R. 656, 664 (Bankr.D.Mass.1995) (holding that an attorney was not "disinterested" at the time the debtor filed a motion for authority to employ him as counsel in second chapter 11 case, and, thus, the attorney was not authorized to represent the chapter 11 debtor because the attorney was a creditor of the debtor at time of the petition based on money owed to the attorney for pre-petition services rendered with respect to a state court case during the debtor's first chapter 11 case); *In re Pierce,*

809 F.2d 1356, 1362 (8th Cir.1987) (holding that the attorney for chapter 7 debtors was not "disinterested" because he was a pre-petition creditor of these estates due to the fact that he held a mortgage on the debtors' real property to secure payment of pre-petition and post-petition services, making him a creditor and, thus, not entitled to compensation).

4. "Disinterested person" means a person that—(A) is not a creditor ... and (E) does not have an interest materially adverse to the interest of the estate ... for any [ ] reason. 11 U.S.C. § 101(14).

because the attorney who represents a chapter 13 debtor obtains an award of fees for services in that case, not all of which may have been fully or completely performed at the time of confirmation. When the unpaid portion of that fee award is presented as a claim in a later case, it must withstand scrutiny under the standards that have always applied to attorneys' fees under non-bankruptcy law. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.06(b).[5] Section 502(b)(4) applies to *all* claims for attorneys' fees owed by a debtor prior to the filing of the case in which the claim is made, whether that claim be for representing the debtor in a prior bankruptcy case, or for representing the debtor in any other capacity (personal injury, state court litigation, probate matters, tax advice, etc. etc.). *See, e.g., In re Willis,* 143 B.R. 428, 433–34 & n. 8 (Bankr.E.D.Tex.1992) (stating that, because the bankruptcy court is not required to unfailingly apply the terms of a Texas contingency fee contract if its terms and conditions under the circumstances are unreasonable, the claim of a debtor's pre-petition personal injury attorney was denied as premature due to the settlement not being finalized at the time of the claim for fees). Thus, the court is obligated, when an objection is made, to examine the facts and circumstances of the prior case to determine whether the unpaid portion of the fee as allowed in the previous case should be allowed as reasonable in light of the ultimate outcome of the case.

■ Built into a court's finding in a prior case that a given attorney fee is "reasonable" is the court's understanding that the attorney for the debtor has signed on to represent the debtor *throughout the case.*[6] That may be for as long as five years in this district.[7] Granted, in most cases, much of the attorney's work is done at the front end of the case (schedules and statement of affairs, plan, attendance at the first meeting of creditors, confirmation, and related client conferences).[8]

5. *See also, e.g., DP Solutions, Inc. v. Rollins, Inc.,* 353 F.3d 421, 433–34 (5th Cir.2003) (holding that the district court's awarding of attorneys' fees, in a breach of contract and tortious interference case, was reasonable and not an abuse of discretion in light of the court's consideration of various factors such as the relative inexperience of the attorney, the complexity of the case, the hours billed, the hourly rate, and determination of the lodestar amounts as set forth in the non-bankruptcy context in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)).

6. *See, e.g., In re Zamora,* 274 B.R. 268, 270 (Bankr.W.D.Tex.2002) (stating that, in a chapter 13 case which was later converted to a chapter 7, counsel was expected to have a continuing duty to perform various services for the debtor post-conversion even though the debtor's attorney likely would not be paid, this court allowed the debtor to assign to counsel any remaining funds that the chapter 13 trustee had in its possession). Section 330(a)(4)(B) authorizes "reasonable compensation" to the chapter 13 debtor's attorney.

*See* 11 U.S.C. § 330(a)(4)(B). This court noted that the fees that a chapter 13 debtor's counsel charges are not exactly pre-petition claims, even though some of the work was done pre-petition. *See Zamora,* 274 B.R. at 270 n. 4. Fees incurred during the chapter 13 phase of the case would be allowed in the converted chapter 7 phase as an administrative expense claim under section 503(b)(2) and awarded under section 330(a). *See id.*

7. *See, e.g.,* 4 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 294.1, at 294–14 (3d ed.2000 and Supp.2002) (stating that the practice in some jurisdictions is that once the chapter 13 debtor's attorney commences representation, the initial fee requires the lawyer to represent the debtor through discharge which is typically three to five years later).

8. *See, e.g.,* BANKR. CT. W.D. TEX. L.R.2016(c)(3) (2000) (it is presumed that in the routine non-business chapter 13 case, the attorney's fee includes such legal services as all conferences with the debtor, preparation of petition and schedules, attendance at the § 341 meeting

However, the fee awarded in chapter 13 cases in this district is a flat fee, not an hourly fee. Thus, it cannot be said to have been "earned" at the front end.[9]

That same fee, when examined as a claim in a later bankruptcy filing, *can* be evaluated in light of the overall standards that would be applied to any attorney's fee, regardless how it is calculated—namely, the reasonableness standards imposed by the Disciplinary Rules of Professional Conduct applicable to lawyers who practice in Texas.[10] This could well mean that the attorney's fee, otherwise allowed as an administrative claim prospectively in a chapter 13 case expected to succeed[11] might not, in retrospect, be reasonable in a case that does not ultimately succeed.

■ Thus, there are legitimate grounds for a trustee in the current case to object to a claim for such attorney's fees, even though they were allowed as "reasonable" in the prior case. Having said that, however, it is readily apparent that it will be the rare case in which the trustee will actually be able to prevail on such an objection, for a number of reasons. First of all, few courts would be inclined to find that a fee was not earned simply because the case failed, without more.[12] Too many

and confirmation/discharge hearings, and preparation of routine motions); *see also In re Lampman*, 276 B.R. 182, 185 (Bankr. W.D.Tex.2002) (in a case in which the debtor voluntarily dismissed his chapter 13 case and sought to pay his attorney out of undistributed funds remaining in the chapter 13 trustee's possession, at least in this district, though chapter 13 debtor's counsel typically incurs most of its fees pre-confirmation, the fees are not allowed as an administrative expense claim until confirmation, and thus, without an allowed claim, the debtor's attorney cannot obtain distribution out of funds on hand for work already performed).

9. The court appreciates that it has become common practice for attorneys to request *additional* fees for some services that may be rendered later in the case, such as applications to modify a plan to accommodate changes in the debtor's circumstances, or applications to incur new debt. The practice does not change the basic principle which controls the award of attorney's fees as a flat fee, however. The attorney is obligated to represent his or her client throughout the case, even were the court to disallow requests for additional fees for additional services.

10. Those standards include: whether the fee is one customarily charged for similar services, the amount involved and results obtained, and whether the fee is fixed or contingent. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 1.04(b).

11. Indeed, attorneys' fees in chapter 13 cases are generally paid out over time from the debtor's monthly payments into the plan, so the success of the case is often a condition of the lawyer being paid at all. *See also* 11 U.S.C. § 330(a)(4)(B) (the court may allow to debtor's counsel in a chapter 13 case a "reasonable compensation ... for representing the interests of the debtor ... based on consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this [*i.e.*, § 330] section").

12. The language of the amendment and the legislative history of § 330(a)(4)(B) demonstrate Congress' intent that debtors' counsel in chapter 12 and 13 cases be paid under a different standard than the customary "benefit to the estate" standard applied to professionals under other chapters. *See* 140 CONG. REC. S4640–01, at S4646–47 (daily ed. Apr. 21, 1994) (statement of Mr. Heflin for Sen. Metzenbaum) (the purpose of the language inserted by amendment 1645 to the Senate Bill was to, *inter alia*, add a new § 330(a)(4)(B), setting a different standard for allowing reasonable compensation for a chapter 13 debtor's attorney "for representing the interests of *the debtor* ... based on a consideration of the benefit and necessity of such services to *the debtor* and the other factors set forth in this section.") (emphasis added); *see also Bankruptcy Reform: Hearing on H.R. 5116 Before the Subcomm. on Econ. and Commercial Law of the House Comm. on the Judiciary*, 103d Cong. 550–51 (2d Sess.1994) (analysis of the National Association of Consumer Bankruptcy Attorneys) (NACBA's comments on section 310 (professional fees), of

factors well out of the control of the attorney can lead to the failure of a chapter 13 case.[13] Thus, a rule that links reasonableness of fees directly with whether a debtor's plan proceeds to completion would in effect make the attorney the guarantor of the plan's success, even though the attorney is in no position to assure that success.[14] If it were to appear that the case failed *because* the attorney failed to do his or her job properly, however, then a court might well (and justifiably) find that the fee was not reasonable after all. That, in this court's experience at least, is the rare case, and is not the case here.

> S.540 of the Bankruptcy Amendments of 1994, indicate that the emphasis on the "benefit and necessity of such services to the debtor" language in § 330(a)(4)(B) represented an important new standard to be used by courts; NACBA did not oppose this provision overall because this amendment contained language "ensuring that chapter 12 and 13 individual debtors' attorneys may be awarded compensation for their work in protecting the debtor's interest in a bankruptcy case."); *Lamie v. United States Trustee*, — U.S. —, 124 S.Ct. 1023, 1033–34, 157 L.Ed.2d 1024, 72 USLW 4152 (2004) (stating that amendment 1645, which added § 330(a)(4)(B), was part of a bankruptcy reform Act designed to curtail abuses in fee awards, mostly in big chapter 11 cases, detailed in 140 Cong. Rec. S14,597–02 (daily ed. Oct. 7, 1994) (statement of Sen. Metzenbaum)).

**13.** *See, e.g.,* 4 Keith M. Lundin, Chapter 13 Bankruptcy § 294.1, at 294–18 (3d ed.2000 and Supp.2002) (stating that the low percentage of fees collected in Chapter 13 cases is not indicative of the quality of representation, "but [of] the reality that many Chapter 13 cases convert or are dismissed before attorneys' fees have been paid in full, especially in districts where it is the custom to pay all or most of the fee through the plan."); *see also infra* n.15.

**14.** *See, e.g.,* 4 Keith M. Lundin, Chapter 13 Bankruptcy § 294.1, at 294–18 (stating that districts, such as the Western District of Oklahoma and the Eastern District of California, that require debtors' attorneys to take their

## II. The Conflation Theory as an Alternative Basis for Determining Reasonableness

The Trustee argues in this case that a court ought to be able to evaluate the reasonableness of fees charged in the prior case by viewing *both* cases as essentially *one* case (in fact, if not in law). If the second case is really a continuation of a larger effort to reorganize the debtor's financial affairs, goes the argument, then the attorney (who is usually the same attorney) should not be able to profit by the debtor's inability to "do it right" the first time.[15] There is case law to support this

> fees in "dribs and drabs through confirmed plans tie the payment of fees to the risk of success of Chapter 13 cases."); *cf. Bankruptcy Reform: Oversight Hearing on Bankruptcy Reform Legislation Before the Subcomm, on Econ. and Commercial Law of the House Comm. on the Judiciary*, 1994 WL 442145 (Aug. 17, 1994) (testimony of Philip J. Hendel on behalf of the Commercial Law League of America) (stating that the section 310 language "reasonably likely to benefit the debtor's estate" should be eliminated from § 330(a)(4)(A)(ii)(I) because it effectively makes the "professional the guarantor of the success of decisions made regarding the handling of issues within a case.").

**15.** One could conceive, for example, of a case in which a fee of $2,000 was allowed to counsel in the first case, the fee being paid out over, say, two years, then the case failing due to, say, a change in the debtor's employment status. To prevent the debtor from losing his or her home, the debtor might well file a new chapter 13 case, in which counsel would then, once again, seek allowance of a $2,000 fee. Under that scenario, the debtor would pay $4,000 to reorganize his or her affairs, the extra fee incurred by virtue of the debtor's having been laid off. A variation on this scenario would create a claim in the second bankruptcy case: the first case fails before the attorneys' fees are paid out under the plan, leaving an unpaid fee due the attorney. That fee is then sought by way of a proof of claim filed in the second case (though now it is sought as an ordinary unsecured claim, not an administrative claim).

"conflation" (or fusion of a prior failed and subsequent case) approach to successive chapter 13 cases, though not in the context of fees. *See In re Thomas*, 123 B.R. 552, 554–55 (Bankr.W.D.Tex.1991) (holding that a five-year chapter 13 plan could not be confirmed because the total term would exceed five years when combined with the plan payments made in the immediately preceding chapter 13 case which had been dismissed).

Even if the rationale of *Thomas* were to be applied in this context, however, it would not affect the court's ruling on the attorney's pre-petition claim for services from the *previous* case. The right place to apply this conflation argument, if it is to be applied at all, is in the evaluation of what ought to be awarded as a reasonable fee in the *new* case, not as a *post hoc* factor to reduce the claim for unpaid fees from the previous case. The claim for fees left unpaid from the previous case can only be reduced to the extent that the fees sought are found not to be "reasonable," and that evaluation can only be applied to the services for which those fees were charged— the work done for the *previous* case. We are not called upon here (and so do not reach) the entirely independent question whether fees in the *new* case can or should be judged in light of the fees already awarded for services performed in the pre-

ceding case, as those fees have already been allowed in this case.

## III. *Conflict of Interest*

The Trustee's real argument—and the one that has debtors' lawyers concerned— is that an attorney should not be permitted to recover fees from a prior case and still proceed as counsel for the debtor in the current case because of conflict of interest rules. Either the claim for unpaid fees from the previous case must be abandoned, or the attorney cannot proceed as counsel for the debtor in the current case. In reality, this argument is not a basis for objecting to the allowance of the attorney's claim under section 502(b)(4). It is rather a way of arguing that the attorney should be disqualified from representing the debtor at all in the subsequent case unless he or she abandons his or her claim from the previous case, because of the alleged conflict. Not surprisingly, the debtors' bar is concerned about the precedent this might set.[16]

In support of the contention that this "disinterestedness" issue is relevant to an objection to a claim for attorneys' fees from a prior case, the Trustee relies first on Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct, as well as bankruptcy case law suggesting that, if an

---

**16.** A debtor whose case has failed may find it difficult, if not impossible, to find another lawyer to handle a later, successive filing (unless, of course, the debtor is simply "touring the bar" as part of an effort to abuse the bankruptcy process—the court uses other, heavier remedies to deal with that sort of tactic, such as bars to refiling or sanctions). A new attorney must start from scratch, as it were. What is more, the successive filing may well be time-critical—a foreclosure is impending—limiting how much time the debtor (usually an unsophisticated consumer of legal services) has to find a replacement. If the first case has failed for reasons that can and should (in equity) be fixed by a successive

filing, then the logical attorney to handle the second filing is usually the same attorney who was representing the debtor in the first case. Of course, the attorney could well insist on having its outstanding fees paid from the previous case before filing the new case, but the court hardly wants to encourage that sort of sharp practice. What is more, both the Code and state bar rules militate against an attorney's doing that sort of thing. *See, e.g.*, Tex., Disciplinary R. Prof. Conduct R. 1.04(a). That means, then, that the attorney who has fees left over from the first case has little choice in the second case but to either file a proof of claim for those unpaid fees, or to abandon the claim altogether.

attorney has a conflict of interest, it should not be able to recover on a claim for fees—even if it be a claim for fees from a previous case.[17]

We start this analysis where the Trustee starts—with non-bankruptcy law. Rule 1.06 of the Texas Disciplinary Rules provides that a lawyer is not to represent "opposing parties to the same litigation," TEX. DISCIPLINARY R. PROF. CONDUCT 1.06(a), or to represent a person if such representation "involves a substantially related matter in which that person's [here, the debtor's] interests are materially and directly adverse to the interests of another client of the lawyer . . .", TEX. DISCIPLINARY R. PROF. CONDUCT 1.06(b)(1), or if such representation "reasonably appears to be or [would] become adversely limited by the lawyer's responsibilities to another client . . . or the lawyer's own interests." TEX. DISCIPLINARY R. PROF. CONDUCT 1.06(b)(2). Clearly, in the context of successive bankruptcies, Rule 1.06(a) is not triggered. Neither is Rule 1.06(b)(1)—there is not "another client" involved. At best, only Rule 1.06(b)(2) might apply—and even then only to the extent that the rule proscribes representation that might become adversely limited by the lawyer's own interests.

The Rule 1.06(b)(2) standard tests whether the lawyer's representation of the debtor in the new chapter 13 case reasonably appears to be adversely limited by the law firm's own interest, as reflected in the outstanding unsecured claim from the previous chapter 13 case. *See, e.g., In re Hunt Int'l Res. Corp.*, 1992 WL 235580, at *14 (Bankr.N.D.Tex.1992) (stating, in a chapter 11 case, that "[a]n actual conflict of interest has been defined as 'an active competition between two interests, in which one interest can only be served at the expense of the other'") (quoting *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr. D.N.J.1989), *rev'd in part*, 119 B.R. 35 (D.N.J.1990)). There is little in a lawyer's having an unsecured claim from leftover fees from a previous case that creates a lawyer's own interest that would be materially adverse to the interests of the debtor client, save potentially in two narrow circumstances.

It could first be argued that a lawyer might be inclined to encourage his or her client to file a new chapter 13 case primarily to enhance the chances of getting paid—and so might be inclined not to recommend the chapter 7 alternative because that choice would have the effect of discharging the attorney's claim from the earlier case. However, absent evidence to indicate that chapter 7 *is* the proper alternative, the conflict is, in most normal cases, illusory. A second chapter 13 filing is almost always motivated by a debtor's desire to obtain benefits only available under chapter 13—the ability to treat arrearages from a home mortgage under a plan, the ability to extend payment terms on a vehicle, or the ability to bind a tax entity to the payout terms of a chapter 13 plan (to say nothing of being free from having to defend dischargeability complaints).

---

**17.** *See, e.g., In re Am. Avia Assocs.-SEA*, 150 B.R. 24, 27–28 (Bankr.S.D.Tex.1992) (holding that, after citing to Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct, the employment of special state court litigation counsel under section 327(e), who were hired pre-petition on a contingency fee basis, was in the best interest of the estate because the law firm did not thereby hold an interest adverse to the chapter 11 debtor or the estate); *see also In re Sterling Chem. Holdings, Inc.*, 293 B.R. 701, 703 (Bankr.S.D.Tex.2003) (stating that compliance with Rule 1.06, among other state bar ethics rules, was a prerequisite to employment that must be ethically and professionally satisfied by counsel, and in certain circumstances with the permission of clients or former clients, prior to accepting employment in a chapter 11 case).

Even when chapter 13 is not readily the appropriate alternative, the attorney will still have discharged his or her duty by advising the client of the alternatives, as is already required. The attorney in such a circumstance would probably be well advised to include a specific disclosure that, in chapter 7, the unpaid fees from the prior case would be discharged, though the rules as written do not expressly require such an additional disclosure. So long as the debtor has been properly advised of the alternatives, and is given a fair chance to select which chapter under which to proceed, no real conflict will have been generated.

One might alternatively argue that the debtor's lawyer would be unlikely to object to a claim held by that very lawyer, creating a materially adverse interest. Yet, debtors seldom object to unsecured claims of *any* creditor in most chapter 13 cases, unless the claim is one likely to jeopardize the ability of the debtor to proceed to confirmation at all. Tax claims, for example, are often the target of objections [18] because such claims enjoy priority status and must be paid in full over the life of the plan. *See* 11 U.S.C. §§ 507(a)(8), 1329(a)(1). Secured claims too might be subject to a debtor's objections if the amount of the claim affects plan feasibility. Ordinary unsecured claims, by contrast, are paid whatever is available after the satisfaction of priority and secured claims. Reducing the amount of any given unsecured claim may increase the payout to other unsecured creditors as a whole, but in the usual case, that is an issue of greater importance to the chapter 13 trustee (or other unsecured creditors). From the debtor's point of view, the payout (at least as a matter of law) is largely irrelevant.[19] Thus, this argument too turns out to be a stalking horse insofar as its potential for generating a conflict of interest cognizable under Rule 1.06(b)(2) is concerned.

Neither of the foregoing scenarios, in this court's view, generates "active competition" between two interests such that one interest could only be served at the expense of the other. *In re Hunt Int'l Res. Corp.*, 1992 WL 235580, at *14 (Bankr. N.D.Tex.1992).

Yet, even if a conflict could be said to exist, it is relatively easily cured by the client's informed consent. *See* TEX. DISC. R. PROF. CONDUCT 1.06(c). If the lawyer *reasonably believes* that the representation of the debtor in the second case will not be materially affected by the lawyer's holding a claim against the debtor for unpaid fees from the previous case, and the debtor has *consented* to the representation after full disclosure of all relevant issues,[20] then the

18. *See, e.g., In re Ramos*, 208 B.R. 655, 656 (W.D.Tex.1996) (holding that, after chapter 13 debtors filed an objection to the proof of claim of the Internal Revenue Service, not as to the amount but instead disputing the section 507(a)(8) priority status of the tax, the section 507(a)(8) priority period was deemed equitably tolled during the debtor's first case to the extent that the debtor could not file a second case without giving the IRS' tax claim priority treatment under the debtors' chapter 13 plan).

19. Indeed, it can be noted that the only obligations normally assigned to the trustee in bankruptcy that are specifically delegated to the debtor in a chapter 13 case are those set out in section 1303 (most relate to use or sale of property of the estate). A debtor must pay over to the trustee all net disposable income, *see* 11 U.S.C. § 1325(b), but usually the trustee assumes the task of reviewing and, when necessary, objecting to claims. Too, debtor's counsel is paid compensation based upon the benefit and necessity of such services *to the debtor*. *See* 11 U.S.C. § 330(a)(4)(B).

20. The existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any. *See* TEX. DISC. R. PROF. CONDUCT 1.06(c)(2).

lawyer may nevertheless proceed despite a technical conflict under Rule 1.06(b)(2). *See id.*

■ In this case, the court does not believe that Rule 1.06(b)(2) is implicated on the facts of the case now before the court, so counsel had no need to obtain the curative consent contemplated by this rule. A lawyer believing that Rule 1.06(b)(2) may be implicated might, in an abundance of caution, want to put to rest any concerns about conflicts of interest and could easily obtain a written waiver laying out the relevant issues for the client, and maintain that waiver in its files. A "belt and suspenders"[21] lawyer might even attach such a consent form to its Rule 2016 disclosure. *See* FED.R.BANKR.P.2016(b).

The bankruptcy court in *Hunt Int'l* did note that obtaining consent or waiver of a conflict of interest may be more difficult in a bankruptcy case, due primarily to the fact that the party giving that consent has fiduciary duties to the larger creditor body that may make giving such consent difficult or impossible. *See In re Hunt Int'l Res. Corp.*, 1992 WL 235580, at *13 (Bankr.N.D.Tex.1992). However, *Hunt Int'l* was a chapter 11 case, where the obligations on both the client and counsel are substantially different from those in the chapter 13 context. A debtor in a

chapter 11 case takes on the fiduciary duties and responsibilities of a debtor-in-possession, a legal entity exercising most of the powers of a trustee. The chapter 13 debtor, though he or she remains in possession of property of the estate, and has the authority to use, sell, or lease that property, still does not assume anything approaching the breadth of trustee duties that a chapter 11 debtor-in-possession does. *Compare* 11 U.S.C. § 1107(a)[22] *with* 11 U.S.C. § 1306(b). What is more, the attorney for the chapter 13 debtor is compensated principally on the basis of the benefit and necessity of its services to the debtor, as distinct from the creditor body or the trustee. *See* 11 U.S.C. § 330(a)(4)(B). The principle fiduciary duties (collection of funds set aside pursuant to the plan for distribution to creditors, distribution of those funds, review of claims, monitoring debtor performance for the benefit of the creditor body) are placed not on the debtor at all, but on the chapter 13 trustee.[23] The legitimate concerns expressed in *Hunt Int'l* simply do not translate into the chapter 13 context.

■ The real question is whether section 327(a) applies to the retention of debtor's counsel in a chapter 13 case—and that question was not before the court in

---

**21.** "Belt and suspenders" refers to an overly cautious approach, usually by an attorney on behalf of a client, to protect an interest in more ways than one. *See, e.g., In re Smith's Bankrupt Estate*, 508 F.2d 1323, 1325 n. 1 (5th Cir.1975). Generally, this type of approach is done in an overabundance of caution, but sometimes courts may view it as an overreaching attempt by the client to have his cake and eat it too. *See, e.g., In re Beck*, 248 B.R. 229, 235 (Bankr.W.D.N.Y.2000).

**22.** Note that section 1107(b) provides that the fact that the lawyer representing the debtor-in-possession is not automatically disqualified from such representation solely by virtue of that same lawyer's having represented the

debtor pre-petition. The qualifier "solely" is important: should that same lawyer hold a pre-petition claim against the estate, *that* might render the lawyer no longer disinterested within the meaning of section 327(a).

**23.** Congress of course intended that some trustee powers be expressly reserved to the debtor, and that other trustee powers should be shared with the trustee. *See* 11 U.S.C. § 1303; *see also* 124 CONG. REC. H11106 (daily ed. Sep. 28, 1978) (remarks of Rep. Edwards) & S17423 (remarks of Sen. DeConcini). The primary *fiduciary* duties in a chapter 13 case, however, are still placed on the chapter 13 trustee.

*Hunt Int'l.* If it does, then all the consent in the world would not vitiate that section's proscriptions on the retention of certain professionals deemed not to be "disinterested." Section 327 superimposes a higher federal conflict of interest standard on professionals than that imposed by state law. *See* 11 U.S.C. § 327(a); *see also* 11 U.S.C. § 1103(b) (applying similar rule to professionals retained by creditors' committees in chapter 11 cases). But section 327 by its terms applies only to professionals retained by "the trustee" (which, in the chapter 11 context includes the debtor-in-possession).[24] There is no similar proscription or limitation on the retention of professionals by *the debtor*. The debtor in a chapter 7 case or in a chapter 11 case could retain whomever they wished, without regard to section 327(a).[25] Of course, the lawyer for the debtor in a chapter 7 or chapter 11 case also cannot recover payment for his or her services out of the estate. *See*

*Lamie v. United States Trustee,* —— U.S. ——, 124 S.Ct. 1023, 1031, 157 L.Ed.2d 1024 (Jan. 26, 2004).

■ The rules change, however, in chapters 12 and 13.[26] Under *those* chapters, the debtor's lawyer, even though clearly not retained by "the trustee" (and so clearly not bound by section 327(a)), nonetheless gets paid out of property of the estate. *See* 11 U.S.C. § 330(a)(4)(B); *see also* 11 U.S.C. § 1306 (property of the estate in chapter 13 includes the debtor's post-petition earnings).[27] The Trustee suggests that the debtor's attorney in a chapter 13 case *should* be subject to the same standard of disinterestedness in the interest of preserving the integrity of the process and to avoid unseemly conflicts. The court declines the invitation to extend the reach of section 327(a) beyond its plain language.[28] Congress was no doubt aware of the anomaly of paying the debtor's at-

---

**24.** *See, e.g., In re Busetta–Silvia,* 300 B.R. 543, 549–50 n. 11 (Bankr.D.N.M.2003) (stating that, in a case in which the court denied the fee application of a chapter 13 debtor's counsel because pre-petition legal services were not entitled to an administrative expense priority under the plan but were instead treated as any other unsecured, non-priority claim, subsections 327(b) & (c) mention chapter 7 and 11, but do not refer to chapter 13 cases, and subsection 327(a) precludes attorneys with pre-petition claims from representing a chapter 11 debtor-in-possession or the trustee in either a chapter 7 or 11 case).

**25.** *See, e.g., id.* (stating that there is no "disinterestedness" test which prohibits an attorney with a pre-petition claim from representing the debtor, as opposed to the trustee, in a chapter 7 or 13 case).

**26.** *See* 11 U.S.C. § 330(a)(4)(B).

**27.** It is usually out of this additional tranche of property that the debtor's lawyer in a chapter 13 case is paid, and usually out of the first 12 to 24 payments, as a priority claim. If unsecured creditors are paid less than 100%,

they are certainly, as a matter of economics, funding the debtor's lawyer out of property that would otherwise be distributed to them. *See* 11 U.S.C. § 1325(b) (on objection of an unsecured creditor, plan must devote all of debtor's net disposable income over three year period to payment of creditor claims).

**28.** *See, e.g., Busetta–Silvia,* 300 B.R. at 549–50 (granting the validity of a chapter 13 debtor's counsel's argument that the "disinterestedness" requirement of section 327(a) does not apply to debtor's counsel in chapter 13 cases because chapter 13 counsel do not need to obtain court approval of their employment while chapter 11 counsel are required to obtain a court order before representing the estate or debtor-in-possession); *see also In re Scribner,* No. 401–44799, slip op., at Conclusion of Law ¶¶ 6–11, *at* http://www.txnb.us-courts.gov/opinions/bjh/ (Bankr.N.D.Tex. 2002) (concluding that, in a chapter 13 case where the debtor's counsel had a pre-petition claim in his fee application, after conducting a "plain language" analysis of §§ 329(a) and 330(a)(4)(B), most of the pre-petition fees incurred "in contemplation of" the case were disallowed but permitted fees rendered "in connection with" the case).

torney with property of the estate, yet not binding that attorney by the strictures of section 327(a). The unique language of section 330(a)(4)(B) confirms that much.[29] Finding no ambiguity in the statute to justify judicial intervention, the court declines to invent a limitation not present in the statute itself.

■ What this means, then, for debtor's lawyers in a chapter 13 case, is that the only conflict of interest rules with which they must, as a matter of law, comply are the conflict of interest rules to which they are bound by virtue of the rules of the state that has licensed them to practice.[30] Thus, the familiar body of law that traditionally applies to test whether a professional can be retained in a bankruptcy case at the expense of the estate does not apply to whether a lawyer can be retained by a debtor in a chapter 13 case even though done so at the estate's expense.[31] Instead, only the law of the state which licenses that particular attorney (and in the usual case in this district, that will be Texas) will provide the standard for whether that attorney has a disqualifying conflict of interest. Unlike their counterparts under other chapters, the attorney representing a debtor in a chapter 13 case may, to the extent that state bar rules permit, obtain consent from his or her client to vitiate any technical conflicts of interest, because the proscriptions of section 327(a) do not apply to them.

■ For all of the foregoing reasons, the court finds that the attorney who has represented a debtor in a prior chapter 13 case will not be disqualified from representing the debtor in a subsequent case simply by virtue of the existence and assertion of a claim for unpaid fees from the previous case. The state bar rules do not impose such a *per se* rule, and, even if such a *per se* rule could be divined from section 327(a), it would not apply in the chapter 13 context because section 327(a) does not control the retention of debtor's counsel in a chapter 13 case.[32]

**29.** Congress substantially overhauled section 330 in 1994. It did not alter the basic structure of section 330(a)(1), which explicitly refers to "a professional person employed under section 327," but struck the words "or to the debtor's attorney" that followed. That express deletion required an express new provision, section 330(a)(4)(B), to preserve the ability of debtor's counsel in chapter 12 and 13 cases to be paid *out of the estate*. The new section, however, contains *no* reference to section 327(a) (though it easily could have), and creates an independent standard for paying debtor's counsel in chapter 13 cases, quite different from the newly revised standards for professionals employed under section 327 found in section 330(a)(3) and (4)(A). *See* discussion *supra* at note 4; *see also* § 224(b), Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994); *Lamie v. United States Trustee,* —— U.S. ——124 S.Ct. 1023, 1031, 157 L.Ed.2d 1024 (Jan. 26, 2004);.

**30.** It is worth noting that, in the Western District of Texas at least, a lawyer must be licensed to practice in a state in order to be admitted to practice in federal court. *See* W.D. Tex. L.R. AT–1(a) (2002) (stating that any person licensed to practice in Texas and in good standing may apply to be admitted to practice in the Western District of Texas). There is no means for independent admission to practice in federal court absent state licensing.

**31.** *See, e.g.,* 1 Keith M. Lundin, Chapter 13 Bankruptcy § 25.4, at 25–7 (3d ed.2000 and Supp.2002) (stating that, while the pre–1994 Bankruptcy Code did not suggest that chapter 13 debtors' attorneys' fees were to be treated differently than those of other·chapters, The Bankruptcy Reform Act of 1994 rewrote § 330, making it explicit that a chapter 13 debtor's counsel *can* qualify for fees from the estate for representing the debtor's interests, even though the benefits of that representation are not necessarily shared by the creditors or the estate).

**32.** Note carefully that, although section 327(a) does not control, state bar rules still do. An attorney with an actual materially

## Conclusion

For the reasons stated above, the Trustee's Objection should be denied and counsel's proof of claim for $1,195 should be allowed.

adverse interest would still be barred from representing the debtor in the new case, by virtue of state bar rules, and would be obligated to disclose the existence of such a conflict under Rule 2016 of the Bankruptcy Rules. If the attorney can, under those rules, justifiably obtain the informed consent of the client to nonetheless proceed, prudent practice would suggest that counsel attach such written and informed consent to the Rule 2016 disclosure.